786 P.2d 680

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Thomas ALTGILBERS,
Defendant–Appellant.**

No. 10071.

Court of Appeals of New Mexico.

Dec. 7, 1989.

Certiorari Denied Jan. 22, 1990.

Jacquelyn Robins, Chief Public Defender, Susan Gibbs, Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HARTZ, Judge.

Defendant appeals his convictions on eighty-three counts of criminal sexual penetration (CSP) and criminal sexual contact (CSC) perpetrated on children under thirteen years of age, in violation of NMSA 1978, Sections 30–9–11(A) and –13(A) (Repl. Pamp.1984). The offenses occurred between 1980 and 1985. Two of defendant's daughters, ages twelve and nine at the time of trial in 1987, were the victims of these crimes.

Defendant makes the following contentions on appeal: (1) the district court erred by admitting prior statements by his children which identified him as their abuser; (2) defendant was denied his constitutional right to confront the witnesses testifying against him because the state, rather than calling his children to testify at trial, used videotapes of depositions during which the children testified without being able to see defendant; (3) the district court erred by denying defendant's motion for a mistrial based on the state's nondisclosure of allegedly exculpatory evidence; (4) for a variety of interrelated reasons arising out of the children's inability to be precise as to the time of most of the offenses, (a) the indictment was defective in charging one count of each offense for every period of two or three months and (b) guilt was not proved beyond a reasonable doubt for seventy-two of the eighty-three counts; and (5) the district court erred by admitting testimony concerning defendant's physical abuse of the children and physical and sexual abuse of their older sister.

We affirm defendant's convictions.

## 1. ADMISSION OF CHILDREN'S STATEMENTS

A therapist, a pediatrician, and a psychologist each testified that the two children had identified defendant as their abuser. The district court admitted the statements to the therapist pursuant to SCRA 1986, 11–801(D)(1)(b) as pretrial consistent statements which rebutted charges of improper influence or motive. The statements to the pediatrician and psychologist were admitted pursuant to SCRA 1986, 11–803(D), as statements made for purposes of diagnosis or treatment. Defendant contends that this testimony constituted inadmissible hearsay and violated defendant's constitutional right of confrontation.

### A. *Pretrial Consistent Statements*

We affirm the district court's admission of the testimony of the therapist, Ms. Flavill, pursuant to Rule 11–801(D)(1)(b). This rule states:

D.  \* \* \* A statement is not hearsay if:

(1) \* \* \* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is

\*　　\*　　\*　　\*　　\*　　\*

(b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive \* \* \* \*

Defendant attacked the credibility of his children's testimony by suggesting that the mother induced the children to fabricate the accusations against him in order to assist her in bitter divorce proceedings. To rebut this contention, the state offered Ms. Flavill's account of both the circumstances in which the children first made their accusations and the mother's reaction to the accusations.

Ms. Flavill testified that her first contact with the children was in August 1985 when the family was referred to her by the state Department of Human Services. Ms. Flavill was asked to provide therapy aimed at improving the mother's parenting skills and helping the children communicate with each other without physical violence. Successful therapy depended on determining the cause of the tension and stress apparent in the family.

When she first met the two children who testified against defendant, Ms. Flavill suspected from their behavior and appearance that they had been sexually abused. She felt, however, that it was best to wait for them to disclose any such information when they felt able to do so. She did broach the subject with the mother, but to no avail. Ms. Flavill testified:

The first time I asked Mrs. Altgilbers about possible sexual contact with her children was at the end of January [1986] \* \* \* I asked her at the time during one of our therapy sessions, I asked her if it was possible that the girls have ever been touched by anybody. And I used that word, I didn't use "sexual contact," I used the word "touch," and she kind of offhandedly said no, kind of surprised and kind of just no investment at all, just no. And I just left it there. And I just wanted to see if she had any information, which she didn't seem to.

It was only after approximately eight months of therapy, in April 1986, that the two children disclosed that their father had sexually abused them. Ms. Flavill described the disclosure as follows:

I have a book on body, just body images, that is used with young children. It's designed with children in fourth and down to talk about how wonderful our bodies are and how great we feel about ourselves. At the end there is a section on sexual reproduction and very simple drawings. And I placed the book—and we'd gone through many chapters. This was like the third and fourth week on body image, and they started to look through the book, and then [the younger child] began—[the older child] began to become very upset in the picture of reproduction and, again, very simple line drawing, and that's when I asked what is upsetting about this picture. She said, "Those are things my dad has done to me."

Ms. Flavill testified that the younger child then left the house, while the older child described in detail the sexual contact she had with her father. When this disclosure was finished, Ms. Flavill started to leave. At that point the younger child stopped her and indicated that she wished to talk. While the older child was in another room, the younger child proceeded to relate in detail the sexual contact with her father. During the younger child's disclosure, the children's mother came home. Ms. Flavill continued as follows:

[W]hen the girls were crying when she came in, I said to her right there, I said, "You know, the girls are talking about sexual contact with their father"? And she said "No, that can't be." At the same time she's saying it can't be, she has tears rolling down her cheeks. So she was acknowledging on an emotional level, but on an intellectual level, she was saying, this can't be, "It's not true." And as she is crying, she is telling me that.

Ms. Flavill's testimony was undeniably relevant to rebut the contention that the children's accusations were instigated by their mother: The disclosures were prompted by the book on body images; the original disclosures were made separately by each child while their mother was not present; their mother declined the opportunity offered in January to accuse defendant of sexually abusing his children and even denied the sexual contact after the children's initial disclosure. The statements of the children were an integral part of this rebuttal and therefore admissible under Rule 11–801(D)(1)(b).

Defendant contends that the children's statements were inadmissible because they did not predate the alleged improper influence by the mother. Defendant argued that the mother had caused the children to make even their original allegations. Rule 11–801(D)(1)(b) does not, however, explicitly set forth any requirement concerning the timing of the consistent statements. To be sure, ordinarily a pretrial consistent statement will not rebut a charge of "improper influence or motive" unless the statement predates the influence or motive. Nevertheless, as this case illustrates, occasionally a statement made after the alleged influence or motive may tend to rebut the allegation. *See generally* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 801(d)(1)(b)[01], at 801–154 to –156 (1989) (collecting federal cases that consider whether consistent statements must antedate alleged existence of motive to fabricate). We see no reason to require exclusion of evidence that satisfies the terms of Rule 11–801(D)(1)(b). *See State v. Lucero,* 109 N.M. 298, 784 P.2d 1041 (Ct.App.1989). Admission of Ms. Flavill's testimony was within the district court's discretion.

Defendant also contends that the prior statements were not admissible under Rule 11–801(D)(1)(b) because the declarants were not "subject to cross-examination concerning the statement[s]," as required by the rule. The children testified via videotaped depositions conducted before trial. Defendant claims that prior to Ms. Flavill's courtroom testimony he was unable to cross-examine the children regarding their statements to her. Yet defendant took a statement from Ms. Flavill prior to the videotaped depositions; so he knew that the children had made statements to her. Defendant had the opportunity to, and did, cross-examine the children about the substance of their testimony. He does not suggest any reason why he could not have cross-examined them concerning their statements to Ms. Flavill. He could have preserved any objection to the admissibility of the statements by making his videotaped cross-examination concerning the statements subject to the admission of the statements. *Cf. Sanderson v. Steve Snyder Enters., Inc.,* 196 Conn. 134, 491 A.2d 389 (1985) (party may object at trial to testimony from discovery deposition offered by opposing party even though objecting party asked the objectionable questions or elicited the objectionable answers); *Osborn v. Massey–Ferguson, Inc.,* 290 N.W.2d 893 (Iowa 1980) (same); 26A C.J.S. *Depositions* § 100 (1956) (same). Moreover, defendant made no request to the court to continue the depositions after trial was underway for the purpose of cross-examining the children concerning their prior statements. Nor did defendant raise a specific objection that Rule 11–801(D)(1)(b) was not satisfied because of the failure of the children to be examined at their depositions concerning their prior statements. Therefore, defendant waived any claim he had that the witnesses were not subject to cross-examination about their prior statements. *See United States v. Maultasch,* 596 F.2d 19, 24 (2d Cir.1979).

**B.  *Statements for Medical Diagnosis or Treatment***

We uphold the district court's admission of the testimony of the pediatrician, Dr. Geil, and the psychologist, Dr. Lockwood, under Rule 11–803(D).  The rule provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\*  \*  \*  \*  \*  \*

(D) * * * Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

This rule is identical to Federal Rule of Evidence 803(4).

Controversy concerning this rule often arises in litigation involving accusations of child sexual abuse. In these cases such statements are often of great importance, yet they press against the limits of the hearsay exception. Former United States Supreme Court Justice Powell (a member of the Court when it prescribed Rule 803(4), see 409 U.S. 1132, 93 S.Ct. 3073, 34 L.Ed.2d lxv (1972)), sitting with a panel of the Fourth Circuit Court of Appeals, has authored a separate opinion summarizing the background, rationale, and content of this exception. *Morgan v. Foretich*, 846 F.2d 941, 950–53 (4th Cir.1988). The exception is derived from a common law exception:

At common law, this exception traditionally was based on a dual rationale. First, the declarant's purpose in making the statement normally assures its trustworthiness because diagnosis and treatment may depend on what the patient tells the physician. Secondly, a fact reliable enough to serve as a basis for a physician's diagnosis or treatment generally is considered sufficiently reliable to escape hearsay proscription. Thus, if the declarant's motive in making the statement is consistent with the purpose of promoting treatment, and the content of the statement is reasonably relied on by a physician in formulating a diagnosis or mode of treatment, then the statement presumptively is admissible.

*Id.* at 951.

Some courts have read these two bases of the common law exception into the requirements of the codified rule. In the leading case of *United States v. Iron Shell*, 633 F.2d 77, 84 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981) the court imposed a two-part test for admissibility of hearsay under Federal Rule 803(4): "first, is the declarant's motive consistent with the purpose of the rule; and second, is it reasonable for the physician to rely on the information in diagnosis or treatment." Applying this test, several courts have upheld the admission of statements made by a child to a physician or psychologist which identify a sexual assailant. *See, e.g., United States v. Renville*, 779 F.2d 430 (8th Cir.1985); *State v. Robinson*, 153 Ariz. 191, 735 P.2d 801 (1987) (En Banc); *State v. Maldonado*, 13 Conn.App. 368, 536 A.2d 600 (1988); *State v. Nelson*, 138 Wis.2d 418, 406 N.W.2d 385 (1987). *See also Stephens v. State*, 774 P.2d 60 (Wyo.1989) (following *Renville* but holding that state did not lay proper foundation). *Cf. Stallnacker v. State*, 19 Ark.App. 9, 715 S.W.2d 883 (1986) (admitting child's identification of perpetrators under equivalent of Rule 11–803(4)); *People v. Oldsen*, 697 P.2d 787 (Colo.App.1984) (same); *State v. Red Feather*, 205 Neb. 734, 289 N.W.2d 768 (1980) (same); *State v. Aguallo*, 318 N.C. 590, 350 S.E.2d 76 (1986) (same); *State v. Vosika*, 85 Or.App. 148, 735 P.2d 1273 (1987) (same); *State v. Garza*, 337 N.W.2d 823 (S.D.1983) (same); *Goldade v. State*, 674 P.2d 721 (Wyo.1983), *cert. denied*, 467 U.S. 1253, 104 S.Ct. 3539, 82 L.Ed.2d 844 (1984) (same); J. Myers & N. Perry, *Child Witness Law and Practice* § 5.36, at 360 (1987) ("growing majority" allows statements identifying abuser). *But see People v. Pluskis*, 162 Ill.App.3d 449, 113 Ill.Dec. 671, 515 N.E.2d 480 (1987) (statement of identity not admissible under counterpart of Rule 11–803(4)); *People v. LaLone*, 432 Mich. 103, 437 N.W.2d 611 (1989) (same); *State v. Bellotti*, 383 N.W.2d 308 (Minn.Ct. App.1986) (same); *Hall v. State*, 539 So.2d 1338 (Miss.1989) (same); *State v. Fitzgerald*, 39 Wash.App. 652, 694 P.2d 1117 (1985) (same).

Justice Powell, however, would not impose the two-part test. He agrees with *O'Gee v. Dobbs Houses, Inc.*, 570 F.2d 1084, 1089 (2d Cir.1978), which held that Federal Rule 803(4) applies "so long as the statements made by an individual were relied on by the physician in formulating his

opinion * * * * " *Morgan v. Foretich*, 846 F.2d at 952. Thus, the rule does not require inquiry into the motive of the declarant. Justice Powell found support for this interpretation in the Advisory Committee Note to the federal rule, which points out that Federal Rule of Evidence 703 (the equivalent of SCRA 1986, 11–703) permits an expert to testify to statements upon which he bases his opinion and that Rule 803(4) merely permits such statements to be admitted also for substantive purposes, a use of the statement which the jury would likely make in any event:

> These Notes explain that, at common law, statements made to a physician consulted only for the purpose of enabling him to testify were not admissible as substantive evidence. Rule 803(4) rejects this limitation because a physician, as an expert, is allowed to state the basis of his opinion, including statements of this kind. This calls for a distinction that juries are unlikely to make, and therefore the limitation has been abolished.

*Id.* at n. 2. *See* 4 J. Weinstein & M. Berger, *supra*, ¶ 803(4)[01], at 803–146 ("the test for statements made for purposes of medical diagnosis under Rule 803(4) is the same as that in Rule 703—is this particular fact one that an expert in this particular field would be justified in relying upon in rendering his opinion?"). Justice Powell recognizes that hearsay that meets Rule 803(4), as he interprets it, may not be as reliable as hearsay meeting the common law rule. He deals with this problem, however, by suggesting that the trial judge scrutinize such hearsay under Federal Rule of Evidence 403 (the equivalent of our Rule 11–403) to determine whether its prejudicial effect outweighs its probative value. Also, he indicates that in a criminal case (*Morgan* was a civil case) the Confrontation Clause may require exclusion of some such hearsay. *See Morgan v. Foretich*, 846 F.2d at 952 n. 2. The analysis under this approach would usually lead to the same results as that recommended in the thorough treatment of this subject in Mosteller, *Child Sexual Abuse and Statements for the Purpose of Medical Diagnosis or Treatment*, 67 N.C.L.Rev. 257 (1989), although Justice Powell's approach may provide greater flexibility to the trial judge by permitting the judge to consider indicia of reliability besides those underlying the Rule 803(4) exception.

Turning to this case, the sole argument made in defendant's appellate briefs against the admissibility of the statements to Drs. Geil and Lockwood pursuant to Rule 11–803(D) is that statements as to fault are not "reasonably pertinent to diagnosis or treatment," and therefore are not admissible under that exception to the hearsay rule. As a general proposition, defendant's argument is correct. A surgeon treating a hip broken in a traffic accident has no need to know who ran the red light. In dealing with child sexual abuse, however, disclosure of the perpetrator may be essential to diagnosis and treatment. A number of courts have recognized this proposition. *See, e.g., United States v. Renville; State v. Robinson; Stallnacker v. State; People v. Oldsen; State v. Maldonado; State v. Aguallo; State v. Nelson; Goldade v. State.* Both Drs. Geil and Lockwood testified to the importance of the identity of the assailant. Dr. Geil testified as follows:

Q. Dr. Geil, in the course of speaking with the girls for the purpose of your diagnosis and any follow-up treatment, what information is necessary to you?

A. Information that the girls or the children state about what's—what happened to them, and usually when children talk about what has happened to them, they will talk about who was involved in making it happen to them. So that information is included in the history that I record in the chart.

Q. Would that be important to you in making your diagnosis and evaluation of the girls?

A. It would be important that they name or they be able to name the specific individual involved, yes, it would.

Dr. Lockwood testified:

Q. Doctor Lockwood, as part of your evaluation, you discovered in talking with the girls, the girls' perception as

to the identity of the offender in this case?

Q. That's correct.

Q. Did you feel that was important to know in terms of your evaluation?

A. Yes, I did.

Q. Why would it be important to know?

A. Because their perception of the offender has to be looked at relative to the descriptions of their own behavior in relationship to their experiences; has to be looked at relative to the psychological test data and kinds of emotions, kinds of stresses, kinds of anxieties, the kinds of self-perceptions and perceptions of other people that are included in and derived from the clinical test data.

It has to be looked at in terms of the probability that the experiences that they described are likely to have happened in the way they described them relative to their chronological age, developmental age. There are a variety of factors, then, that come into play once you are aware of the child's perception of the offender as well as other adults as other people who are supposed to be in positions of trust and authority.

Thus, the statements of the children to Drs. Geil and Lockwood meet the requirements of Rule 11–803(D). We need not consider the state of mind of the children in making the statements to the two doctors. We agree with Justice Powell that Rule 11–803(D), unlike the common law rule, does not require inquiry into the patient's motive in making the statement. In any event, defendant has not argued on appeal that the statements were inadmissible because the children lacked the required motive in making them. The trial judge properly acted within his discretion in admitting the testimony.

C. *The Confrontation Clause*

Although defendant contends that admissibility of the prior statements of the children violated his constitutional right to confront the witnesses against him, the argument in defendant's appellate briefs went

no further than to claim that the evidence was not admissible under any hearsay exception. In any case, unlike in *Morgan* (in which Justice Powell suggested a possible Confrontation Clause problem with such hearsay), here both children testified and were subject to cross-examination concerning their allegations against defendant. Ordinarily, when the declarant is subject to effective cross-examination under oath about the extra-judicial statement, the Confrontation Clause is satisfied. *See* Weinstein & Berger, *supra*, ¶ 800[04], at 800–23 to –25. "Actual cross-examination is not the test for whether confrontation rights are satisfied; it is the *opportunity* for cross-examination which is the key." *State v. Tafoya*, 105 N.M. 117, 122, 729 P.2d 1371, 1376 (Ct.App.1986) (emphasis in original), *vacated and remanded on other grounds*, 487 U.S. 1229, 108 S.Ct. 2890, 101 L.Ed.2d 924 (1988). *See State v. Hensel*, 106 N.M. 8, 738 P.2d 126 (Ct.App.1987). Defendant had such an opportunity at the children's depositions. Moreover, he could have sought to re-depose the children during trial. *Cf. United States v. Maultasch.* Thus, if the depositions were a constitutionally-adequate substitute for the testimony of the children at trial, the prior statements pose no Confrontation–Clause problem. In other words, the Confrontation–Clause issue with respect to the children's prior consistent statements reduces to the question of whether the use of the children's depositions at trial satisfied the Confrontation Clause. We address that issue in the next section.

2. VIDEOTAPED DEPOSITIONS

Defendant contends that because his daughters' testimony was introduced at trial through videotaped depositions, his constitutional right to confront the witnesses against him was violated. Defendant asserts that *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) requires reversal. *Coy* held that the use of videotaped depositions in that case violated the defendant's right to confrontation. We have, however, interpreted *Coy* to apply only when the district court fails to make

individualized findings that the particular witnesses require protection against testifying at trial face-to-face with the defendant. *See State v. Tafoya*, 108 N.M. 1, 765 P.2d 1183 (Ct.App.1988), *aff'g*, 105 N.M. 117, 729 P.2d 1371 (Ct.App.1986), *cert. denied*, —— U.S. ——, 109 S.Ct. 1572, 103 L.Ed.2d 938 (1989). *Accord State v. Vincent*, 159 Ariz. 418, 768 P.2d 150 (1989) (En Banc); *State v. Eaton*, 244 Kan. 370, 769 P.2d 1157 (1989); *State v. Conklin*, 444 N.W.2d 268 (Minn.1989).

The district court in this case made individualized findings that the children needed such protection. After hearing testimony of the victims' long-time therapist, Ms. Flavill, and of a psychologist, Dr. Lockwood, who had conducted a clinical interview and psychological tests of the victims, the district court made detailed oral findings as to why each child would suffer harm from having to testify in front of defendant.

Both Ms. Flavill and Dr. Lockwood expressed grave concern for the mental health of both victims if required to testify in the presence of defendant. Dr. Lockwood's testimony was:

Q. * * * Dr. Lockwood * * * what is your opinion * * * as to the affect that the presence of Mr. Altgilbers will have on [the older child's] psychological make-up and her ability to testify?

A. I think it would be devastating on both counts and I would be very concerned that the trauma she would suffer would be such that she might require hospitalization.

* * * * * *

Q. And in reference to [the younger child] and Mr. Altgilbers['] presence during testimony?

A. I think there's a high probability she would regress to earlier and much less viable motion [stet] of functioning and intellectual functioning. So I think we would have marked increase in anxiety which would result in bizarre and infantile and self-destructive—not in the terms of suicidal—but in terms of the extremes of poor judgment in behavior that might have occurred earlier.

Ms. Flavill agreed with Dr. Lockwood. She went so far as to say that the older child "would just as soon die" as have her father present for the deposition; the child "would kill herself first, run away and then kill herself." Such testimony is sufficient to support a finding that these particular witnesses needed protection.

In addition, we observe that the trial judge in this case, now a member of our supreme court, was the same judge who presided at the trial in *Tafoya*. In *Tafoya* we noted that the trial judge had refused to allow a videotaped deposition of one child he believed to be capable of withstanding a face-to-face confrontation. In the present case the judge initially stated that defendant should be present at the depositions of the children. He changed his position only after a motion by the state and an evidentiary hearing. At the hearing the state called Dr. Lockwood and Ms. Flavill; defendant presented no witnesses. Clearly, the trial judge considered the issues on an individualized basis and did not presume that all child victims should be protected by the use of videotaped depositions outside the presence of the defendant. Such careful consideration distinguishes this case from *Coy*.

Also, the procedure used in videotaping the depositions was similar to that in *Tafoya*. In *Tafoya* the defendant sat in a separate room, where he could view the proceedings on a television monitor. The witnesses could not see him, but were aware that he could see them. Defense counsel, the prosecutor, and the trial judge were in the room with the witnesses. The defendant and his attorney could communicate through microphones and headsets.

During videotaping in this case defendant sat in a glass booth, where the witnesses could not see him. He was in contact through headphones with his attorneys, who were in the room with the judge, the prosecutors, and the witnesses. Each child was allowed to be accompanied by a supportive adult. Of course, each child was subject to cross-examination. Because the procedure was substantially similar to that in *Tafoya*, we reject defendant's con-

tention that the allowance of videotaped depositions violated his right to confront the witnesses against him.

### 3. NONDISCLOSURE OF ALLEGED EXCULPATORY EVIDENCE

■ Defendant contends that the district court erred in refusing to grant him a mistrial on the ground that the prosecutor failed to disclose exculpatory evidence to him, thus violating his right to due process. The undisclosed evidence was the statement by the children's therapist, Ms. Flavill, that one of the children had temporarily recanted her earlier accusations that defendant had sexually abused her. This evidence first came to defendant's attention during Ms. Flavill's trial testimony, after the jury had viewed the victims' videotaped depositions. Because of a number of factors we find no violation of due process in the state's failure to disclose Ms. Flavill's statement prior to trial.

One critical factor is that the evidence was disclosed at trial. The leading case in which the United States Supreme Court found that suppression of evidence by the prosecution violated due process is *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Yet in that case, and the later Supreme Court cases applying its principles, the defendant learned of the undisclosed evidence only after trial. Indeed, the Court has noted, "The rule of *Brady* * * * arguably applies in three quite different situations. Each involves the discovery, *after trial,* of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976) (emphasis added). In this case, unlike the *Brady* line of cases, the jury heard the previously undisclosed testimony. The damage to defendant therefore must lie in any impairment to his tactical use of the evidence because of delayed disclosure. At least one court has suggested that due process requires only that all available material exculpatory evidence be presented to the trier of fact, not that defendant have that evidence in time to make a tactical decision. *State v. Roussel,* 381 So.2d 796, 799–800 (La.1980).

We need not go so far. Delaying disclosure of evidence to the defendant could affect the trial. Nevertheless, in general, imposition of a barrier to more effective use of evidence would have substantially less impact than total deprivation of use.

The United States Supreme Court has not established a standard to apply in evaluating whether delayed disclosure requires reversal of a conviction. The Supreme Court's test for a *Brady* violation is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). The language in *Agurs* restricting "[t]he rule of *Brady*" to evidence undisclosed until *after* trial suggests, however, that a different test applies to delayed disclosure such as in this case.

In order to decide the present case we need not establish precisely how to weigh any particular factor in determining whether delayed disclosure violates due process. A number of features here compel the conclusion that delayed disclosure did not deprive defendant of fundamental fairness, which is the essence of due process: The evidence was only arguably exculpatory; the evidence was cumulative; the witness who provided the evidence had been available to defense counsel for interview; defense counsel had been alerted to the possibility that the witness might have such evidence; the prosecution had in no sense intentionally deprived defendant of pretrial disclosure; and defense counsel did not seek an opportunity at trial to try to use the evidence more effectively. In short, the delayed disclosure almost certainly did not alter the result of the trial and defense counsel was at least as responsible as the prosecution for his not learning of the evidence prior to trial. We discuss each feature in turn.

The state contends that the child's recantation was not exculpatory. The prosecutor elicited Ms. Flavill's testimony concerning the recantation during her direct testimony in order to buttress the state's case.

Ms. Flavill testified that a temporary recantation fits the profile of a sexually-abused child. In addition, the child's recantation was so incredible that it reinforced the accusations. Ms. Flavill testified:

> The next therapy session that I came, she said, "You know, none of this happened to me," and I said, "can you tell me more about that, instead?" and she said, "you know, I've lied about all these incidents" and in great detail, "I've lied about this and I lied about dad and the bed, and I lied about the wooden bed and I lied about being four."
>
> I said, "You were never four?" and she said, "no, I was never four." Just a complete denial. She said she lied about wetting the bed * * * *

Of course, defendant is entitled to argue that the recantation was the true statement. Indeed, if the prosecution has a prior inconsistent statement of a material witness, it should disclose that statement to defendant. In this case, however, we question whether the prior statement would substantially impeach the credibility of the child.

Moreover, testimony that the child recanted to Ms. Flavill was cumulative evidence. The child had followed a similar course in relating her accusations to Dr. Geil: first implicating her father, then recanting the whole story, and then returning to her original account. Before trial the state disclosed to defendant the recantation of the child to Dr. Geil. Defense counsel cross-examined the child about that recantation during her deposition, although the child testified that she could not remember recanting. If defense counsel had known at that time of the recantation to Ms. Flavill, she undoubtedly would have questioned the child about that recantation also. But after learning at trial of the recantation to Ms. Flavill, defense counsel did not request an opportunity to re-depose the child for possible use at trial. Apparently defense counsel felt that only marginal benefit could be gained by additional cross-examination.

In addition, we would not characterize the state's failure to disclose the recantation as a typical "suppression" of evidence. Defendant does not contend that the state withheld from defendant some written document it possessed which reported the child's recantation. The undisclosed information was simply knowledge by the state of the probable testimony of a witness, Ms. Flavill, who was not in any sense withheld from the defense. On the contrary, defense counsel twice interviewed Ms. Flavill prior to trial. Ms. Flavill's knowledge of the recantation was as available to the defense as it was to the prosecution. In such a circumstance, other courts have held that the state has no obligation of disclosure. In *United States v. Campagnuolo*, 592 F.2d 852, 861 (5th Cir.1979), the court wrote: "'[T]he government is not obliged under *Brady* to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself.'" (Quoting *United States v. Prior*, 546 F.2d 1254, 1259 (5th Cir.1977).) *Accord United States v. Pandozzi*, 878 F.2d 1526 (1st Cir.1989); *United States v. Starusko*, 729 F.2d 256 (3rd Cir.1984); 2 W. LaFave & J. Israel, *Criminal Procedure* § 19.5(e) (1984). *See Lewis v. State*, 497 So.2d 1162, 1163 (Fla.Dist.Ct.App.1986) (Jorgenson, J., specially concurring). There may be occasions when the defendant's access to a witness does not provide the defendant with equal access to that witness's knowledge; for example, the witness's knowledge may relate to some matter that is unlikely to be inquired into and the witness is unsympathetic to, and therefore unlikely to volunteer information to, the defendant. Here, however, defendant knew that the child had recanted to Dr. Geil. Therefore, if defendant had believed that evidence of additional recantations could be important to the defense strategy, one would have expected his counsel to inquire of other therapists as to whether the child had recanted to them also.

We also think it significant that the failure of the state to disclose the recantation to defendant was unintentional. The prosecutor so represented to the district court, and defendant has not challenged that representation. Although it is unclear what pertinence the state of mind of the prosecu-

tion has in a matter arising under *Brady*, see *United States v. Bagley*, 473 U.S. at 678–84, 105 S.Ct. at 3381–85 (opinion of Justice Blackmun, in which Justice O'Connor joined), the intent of the state can be dispositive in other circumstances in which a defendant claims that actions of the state unconstitutionally deprived him of evidence. *See Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (state destroyed evidence that might have been scientifically tested to determine identity of rapist).

Finally, we note that defense counsel did not seek a continuance after the disclosure at trial of the recantation to Ms. Flavill. In that circumstance, we believe that defendant has waived any claim that the belated disclosure impaired his ability to cross-examine or rebut Ms. Flavill's testimony effectively. *See W. LaFave & J. Israel, supra*, § 19.5(e); *Gorham v. Wainwright*, 588 F.2d 178 (5th Cir.1979); *Timmons v. Commonwealth*, 555 S.W.2d 234 (Ky.1977); *State v. Roussel*.

Thus, a number of factors contribute to the conclusion that delayed disclosure in this case did not deny defendant due process of law. We have not intended to suggest that any factor in itself would suffice to support affirmance. More precise analysis can await a more difficult case. We stress, however, that the best way to avoid reversal for failure to disclose evidence to defendant before trial is for the state to review methodically and diligently the information available to it and to disclose all exculpatory information to defendant, giving defendant the benefit of the doubt on arguable matters. *See State v. Sandoval*, 99 N.M. 173, 655 P.2d 1017 (1982).

4. CLAIMS ARISING FROM THE INABILITY OF THE CHILDREN TO PROVIDE A TIME FRAME FOR MOST OF THE ALLEGED OFFENSES EXCEPT TO SAY THAT DEFENDANT COMMITTED FREQUENT, VIRTUALLY INDISTINGUISHABLE ACTS OVER A LENGTHY PERIOD OF TIME

Defendant's two children testified to repeated sexual abuse over a period exceeding five years. The younger child testified that sexual contact happened every day or every other day. The older child testified that sexual contact occurred two or three times a week. Each count of the indictment alleged that the offense of criminal sexual penetration (CSP) or criminal sexual contact (CSC) occurred on or between one date (usually the first day of a month) and a date two or three months later.

Defendant appears to raise the following specific contentions: (1) the state should not be allowed to prosecute an ongoing offense by indicting on a number of charges; (2) the statute under which defendant was prosecuted is void for vagueness, because it grants unlimited discretion to the state in deciding how many charges to bring for a course of criminal conduct; (3) the indictment constituted overcharging, thereby suggesting to the jury that defendant must be guilty of something; (4) the failure to provide defendant with a description, including the date, of each specific instance of alleged sexual penetration or contact prevented him from formulating any definite defense or alibi; (5) the vagueness of the charges creates double jeopardy problems because defendant cannot tell if he has been convicted of both an offense and a lesser included offense; and (6) the convictions on seventy-two of the counts were not supported by evidence that could establish beyond a reasonable doubt that each charged act occurred sometime within the dates alleged.

Before specifically addressing each contention, we make some general observations, which should assist in resolving these issues. The state faces a dilemma when prosecuting on evidence such as that in this case. On one hand, charging one count for each week, or even a shorter period, throughout a multi-year period can be logistically overwhelming (hundreds of counts and jury instructions), oppressive to defendant, and to no purpose. On the other hand, one count may well seem inadequate to represent a great number of serious criminal offenses. Also, as will be discussed further in later sections of this

opinion, substantial unfairness to a defendant can result when one count, charging one act of misconduct, can be proved by evidence of any one of a multitude of separate acts committed over a lengthy period of time. New Mexico decisions have occasionally found prejudice when a conviction on a single count of an indictment could be sustained by proof of any one of several different acts. *See State v. Rodman,* 44 N.M. 162, 99 P.2d 711 (1940); *State v. Foster,* 87 N.M. 155, 530 P.2d 949 (Ct.App. 1974); *State v. Salazar,* 86 N.M. 172, 521 P.2d 134 (Ct.App.1974). *Cf. State v. Gurule,* 90 N.M. 87, 92, 559 P.2d 1214, 1219 (Ct.App.1977) (defendant's argument rejected because only one offense charged). Such concerns are often considered under the rubric of "duplicity"—"the joinder of two or more distinct and separate offenses in the same count [of an indictment]." *State v. Peke,* 70 N.M. 108, 114, 371 P.2d 226, 230, *cert. denied,* 371 U.S. 924, 83 S.Ct. 293, 9 L.Ed.2d 232 (1962).

Recognizing this dilemma, courts have deferred to the prosecutor's charging pattern in such circumstances. As expressed in *United States v. Shorter,* 608 F.Supp. 871, 876 (D.D.C.1985), *aff'd,* 809 F.2d 54 (D.C.Cir.1987), *cert. denied,* 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987):

> [I]t is well established that two or more acts, each of which would constitute an offense standing alone and which therefore could be charged as separate counts of an indictment, may instead be charged in a single count if those acts could be characterized as part of a single, continuing scheme.
>
> The grand jury, presumably under the guidance of the prosecutor, may charge few or many counts depending upon a variety of factors, and, absent oppression or impermissible duplicity, the decision with respect thereto is within the realm of grand jury and prosecutorial discretion. [Citations omitted.]

*Accord United States v. North,* 708 F.Supp. 372 (D.D.C.1988). For several acts to be charged in one count, it is not necessary that the acts constitute a continuing offense. Several decisions relied upon by *Shorter* dealt with multiple discrete offenses. *See, e.g., United States v. Robin,* 693 F.2d 376 (5th Cir.1982) (threats on the President); *United States v. Girard,* 601 F.2d 69 (2d Cir.1979) (sale of government records relating to four different individuals). The proposition stated in *Shorter* is not restricted to federal courts. *See State v. Hunt,* 49 Md.App. 355, 359, 432 A.2d 479, 481–82 (1981) ("Another exception to the rule that only one offense may be charged in a single count is where the property is systematically stolen from one owner over a period of time * * * * "). *Cf. State v. Pedroncelli,* 100 N.M. 678, 675 P.2d 127 (1984) (whether series of embezzlements is one offense or multiple offenses is question of fact).

Unfortunately, the pattern of sexual misconduct alleged in this case is not rare. Prosecutors all too often face the charging problem presented here. Courts almost uniformly grant prosecutors discretion in how they frame the charges. As expressed in *State v. Petrich,* 101 Wash.2d 566, 571, 683 P.2d 173, 178 (1984) (En Banc):

> Multiple instances of criminal conduct with the same child victim is a frequent, if not the usual, pattern. Note, *The Crime of Incest Against the Minor Child and the States' Statutory Responses,* 17 J.Fam.Law 93, 99 (1978–79). Whether the incidents are to be charged separately or brought as one charge is a decision within prosecutorial discretion. Many factors are weighed in making that decision, including the victim's ability to testify to specific times and places. * * * The criteria used to determine that only a single charge should be brought, may indicate that the election of one particular act for conviction is impractical.

One jurisdiction that has held otherwise is New York. New York appears to require that indictments for sodomy and sexual abuse must provide separate counts for separate acts, *see People v. Keindl,* 68 N.Y.2d 410, 509 N.Y.S.2d 790, 502 N.E.2d 577 (1986), although the court may permit an exception when the victims cannot identify the acts with particularity. *See id.* at

420, 509 N.Y.S.2d at 794, 502 N.E.2d at 582. Other courts have not been so restrictive, although they may require measures during trial to prevent possible prejudice to the defendant from duplicity. *See State v. Covington,* 711 P.2d 1183 (Alaska Ct.App. 1985) (state may charge one count when multiple acts of child sexual offenses over lengthy period of time, but "either/or" rule applies: *either* (1) state must elect the act upon which it relies for conviction *or* (2) court must instruct jury that to convict it must agree unanimously on act constituting the offense); *People v. Jeff,* 204 Cal. App.3d 309, 251 Cal.Rptr. 135 (5th Dist. 1988) (counts embrace periods of time in which multiple offenses occurred; but court may need to instruct jury on need for unanimity as to specific criminal act); *People v. Long,* 55 Ill.App.3d 764, 13 Ill.Dec. 288, 370 N.E.2d 1315 (1977) (indictment charged monthly acts of incest for 15 months; testimony showed acts took place once or twice a month); *Bonds v. State,* 51 Md.App. 102, 442 A.2d 572 (1982) (one count for sexual offenses against 11–year–old girl occurring over 9–month period); *Commonwealth v. King,* 387 Mass. 464, 441 N.E.2d 248 (1982) (count charged defendant with unlawful intercourse with child "on divers dates and times" during 21–month period); *State v. Hoban,* 738 S.W.2d 536 (Mo.Ct.App.1987) (evidence on one count of sodomy with a child showed multiple incidents over 15–month period); *State v. Kitchen,* 110 Wash.2d 403, 756 P.2d 105 (1988) (En Banc) (follows the "either/or" rule). *See also State v. Mulkey,* 73 Md.App. 501, 534 A.2d 1374 (1988) (discussing cases from various jurisdictions upholding indictments, but remanding for bill of particulars to determine whether indictment stated with "reasonable particularity").

We now address defendant's specific contentions.

### A. *The Decision as to How Many Counts to Charge*

Defendant's first contention appears to be that the state has split one course of conduct into too many counts. As we understand defendant, each ongoing offense (for example, the CSC offenses against the younger child) should be the subject of only one charge. We disagree.

■ We recognize that in most of the above-cited child sexual abuse cases one count of the indictment covered the entire period during which the alleged misconduct occurred. Still, we see no reason why the choice for the prosecution must be between either one count in toto or one count for each act. *See United States v. North* (three counts of obstruction of justice, each encompassing multiple acts); *Delcher v. State,* 161 Md. 475, 158 A. 37, 41 (1932) (series of embezzlements grouped by month). The charging pattern that best reconciles the community's interest in proper enforcement of the laws and the interest (shared by the community and the defendant) in fairness to the defendant may well be a charging pattern fitting between the two extremes. Once one departs from the alternatives of (1) charging one count for the entire period of time or (2) charging a count for every possible infraction, the prosecutorial decision is somewhat arbitrary; but the absence of a principle determining precisely where to draw lines does not mean that the drawing of a line is unfair or oppressive. Indeed, in the present case dividing the multi-year period of the alleged infractions into two- or three-month intervals advances the public interest in having the number of charges reflect the magnitude of the conduct while reducing potential problems (discussed at greater length later) with respect to notice to defendant, double jeopardy, and jury unanimity that would arise from a single count encompassing several years. In short, we reject defendant's contention that the indictment must charge only one count (encompassing the entire time period of the alleged violations) for each type of alleged offense.

### B. *Void for Vagueness*

■ We also do not agree with defendant that problems of statutory vagueness forbidden by the Due Process Clause arise from permitting the state discretion in se-

lecting a charging pattern. The void-for-vagueness doctrine relied upon by defendant is directed at statutes whose language is so vague that (1) persons do not have fair warning as to what the law forbids and (2) law enforcement officers, judges, and juries have excessive discretion in deciding whether a particular person's conduct should be subjected to criminal sanctions. *See Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). In contrast, defendant has no claim that the CSP and CSC statutes are too vague to inform defendant or others what conduct is criminal. What is involved in the present case is not discretion to decide what acts are criminal but discretion to decide how to prosecute criminal acts. Such prosecutorial discretion is well-recognized in the law. Due process does not impose strict limits on that discretion. *See Bordenkircher v. Hayes*, 434 U.S. 357, 365, 98 S.Ct. 663, 669, 54 L.Ed.2d 604 (1978). No void-for-vagueness problem is presented in this case.

C. *Claim that Excessive Number of Counts Impermissibly Implies Prejudice*

█ There is no merit to defendant's contention that the indictment was improper because the number of counts compelled the jury to believe that defendant must have done something wrong. We have ruled before that the number of counts alone does not constitute prejudice. *See State v. Burdex*, 100 N.M. 197, 203, 668 P.2d 313, 319 (Ct.App.1983); *State v. Montano*, 93 N.M. 436, 439–40, 601 P.2d 69, 72–3 (Ct.App.1979). Given the nature of the evidence against defendant, we see nothing oppressive or otherwise improper in the number of counts in the indictment.

D. *Notice*

█ Defendant contends that the failure to inform him of each specific instance of sexual contact and the date prevented him from formulating any definite defense or alibi. Defendant cannot, however, raise lack of notice for the first time on appeal, particularly since he did not request a statement of facts before trial. *See State v. Martin*, 94 N.M. 251, 609 P.2d 333 (Ct.

App.1980). At no time before or during trial did defendant claim that he had insufficient information to prepare his defense. Indeed, before trial, defense counsel had interviewed or deposed the children and the professionals who had examined them. Defendant knew the gist, perhaps even the totality, of the accusations against him. He never suggested that if he had received sufficiently precise allegations he could have presented an alibi defense for the multi-month counts of the indictment. On the contrary, he testified that he could not remember whether he was or was not home on particular days.

█ In any case we know of no principle of law that requires the state to rely only on evidence that lends itself to an alibi defense. If the record indicated that the state could have been more specific as to time, defendant's argument would have more force. The circumstances here, however, did not oblige the state to provide greater specificity. Notice need be only specific enough to enable the accused to prepare his defense and to protect against double jeopardy. *See State v. Naranjo*, 94 N.M. 407, 611 P.2d 1101 (1980); *State v. Mankiller*, 104 N.M. 461, 722 P.2d 1183 (Ct.App.1986). We note that when the state's evidence is imprecise as to time, the very vagueness of the allegations that handicaps an alibi defense can also cast doubt on the veracity, or at least the reliability, of the allegations. In a similar case the Maryland Court of Appeals wrote:

> The defendant who is charged with committing a crime, although the State cannot specify its exact date, is still protected by the requirement that the trier of fact must find him guilty beyond a reasonable doubt. We think that in many cases the trier of fact's determination of whether the defendant is guilty beyond a reasonable doubt will be affected by the witness's inability to specify the exact day and time of the alleged crime and the subsequent inability of the defendant to establish an alibi defense over so long a period of time. However, the inability of the State to be so specific should not be an absolute bar to prosecu-

tion. Sufficient protections exist such that this lack of specificity does not violate an accused's constitutional right to be apprised of the charges against him.

The crux of this case was who did the trier of fact believe? In many prosecutions the outcome depends on this determination. Here, the court obviously believed the testimony of the prosecutrix and disbelieved that of the appellant.

*Bonds v. State,* 51 Md.App. at 105–06, 442 A.2d at 575–76. *Accord State v. Hoban,* 738 S.W.2d at 541–42. In most of the child sexual abuse cases referenced earlier in this opinion, the period covered by each count of the indictment was at least as long as the periods covered by each of the counts against defendant here. In the circumstances of the present case we hold that defendant has no valid claim on appeal of inadequate notice.

### E. Double Jeopardy

The usual double-jeopardy concern arising from duplicitous indictments is that the government may bring new charges, "arguing that the object of the new indictment was not encompassed under the earlier charge." *United States v. Shorter,* 608 F.Supp. at 879. That is not a problem here. Because of the scope of the indictment in this case, the state would not be permitted in the future to charge defendant with any sexual offenses involving his two children during the time encompassed by the counts in the indictment. *See State v. Rudd,* 759 S.W.2d 625, 628 (Mo.Ct.App.1988).

▋ Nevertheless, defendant raises a double jeopardy claim. His contention is that because the charges of CSC are so imprecise, it is possible that the convictions of the crimes of CSC were actually lesser included offenses of the convictions for CSP. The final arguments of counsel at trial, however, establish that there was no confusion as to what alleged conduct formed the basis of the charges of CSC. Although the precise timing of the episodes

of CSC and CSP was not provided, there was a clear distinction between which types of conduct constituted CSP and which constituted CSC.[1]

### F. Proof Beyond a Reasonable Doubt

Defendant concedes that with respect to eleven of the eighty-three counts for which he was convicted there was sufficient evidence tying the alleged criminal act to a specific time (such as the time when the children's mother was visiting her own mother). For the other seventy-two counts, however, defendant claims that the "testimony that the acts occurred frequently within [the dates alleged for each count] does not establish beyond a reasonable doubt that a charged act actually happened within the times alleged in any one count." He relies on *People v. Atkins,* 203 Cal. App.3d 15, 249 Cal.Rptr. 863 (5th Dist. 1988). In *Atkins* the alleged victim of child sexual abuse could not pinpoint dates but testified that the abuse occurred repetitively over a long period of time. The court wrote: "[T]he prosecutor did not meet his burden to prove a specific offense with regard to [the pertinent counts]. Such a failure results in our finding that there is insufficient evidence to support these counts, and the judgment must be reversed as to these counts with retrial barred." *Id.* at 19, 249 Cal.Rptr. at 865. The rationale of *Atkins* was identical to that in *People v. Van Hoek,* 200 Cal.App.3d 811, 246 Cal.Rptr. 352 (5th Dist.1988), from which *Atkins* took several passages verbatim. We quote at length from *Van Hoek* to illustrate what we are rejecting under the facts of this case:

> C.'s testimony consisted of a blur of acts, nonspecific as to a particular occasion. When the victim's testimony is bland and unspecific as to any occasion and yet involves accusations of numerous occasions, it would be impossible for the jury to unanimously agree on one specific act for each charge. The argu-

---

1. Defendant also advances an argument that the convictions for CSC cannot stand because they may have been based on testimony concerning physical abuse by defendant—such as applying force to the buttocks of one of the children.

But final arguments by the prosecutor and defense counsel made clear that defendant was not charged with any offense based on that conduct.

ment that the jury must have believed the victim was credible and believed all the acts occurred is unavailing. As previously discussed, the defendant, by these types of accusations and evidence, is seriously deprived of any defense except to generally attack the victim's credibility.

Implicit in the cases requiring specificity of charges and the charges being supported by specific testimony given at trial is the fundamental due process rule, steeped in antiquity, that the prosecution must prove a specific act and the twelve jurors must agree on one specific act. *Id.*, 200 Cal.App.3d at 817, 246 Cal.Rptr. at 356. The court concluded:

> We too are deeply concerned with the resident child molester and would like very much for each of them to be brought to justice for their appalling behavior. But, this concern should not cloud the issue now before this court, which is that these types of cases, where the victim's unspecific testimony is uncorroborated, proceed in such a manner that the defendant's rights to due process are seriously violated. He is deprived of the right to mount an adequate defense and the prosecution is not required to meet their burden of proving the defendant committed a particular act on a particular and specific occasion. Here, the prosecution neither charged an offense specific as to time, place or other particular, nor did it prove a specific offense with regard to any count.

*Id.*, 200 Cal.App.3d at 818, 246 Cal.Rptr. at 357.

The quotation from *Van Hoek* melds several different concerns: notice, jury unanimity, and "the fundamental due process rule, steeped in antiquity, that the prosecution must prove a specific act." *Id.*, 200 Cal.App.3d at 817, 246 Cal.Rptr. at 356. We have already addressed notice. Although defendant has not raised jury unanimity as an issue on appeal, a brief discussion will assist in treating the final concern of *Van Hoek.*

The principal unfairness that can result from a duplicitous count of an indictment (charging, say, acts A and B) is that some members of the jury may render a guilty verdict because they are convinced beyond a reasonable doubt that the defendant committed act A (but are not so convinced regarding act B) while other jurors convict the defendant because they are convinced that the defendant committed act B (but not act A). In that circumstance the defendant would be convicted improperly, because for neither act did the jurors agree unanimously that the defendant had committed it. To prevent this outcome, several jurisdictions have adopted an "either/or" rule. *See, e.g., State v. Covington* (Alaska); *State v. Kitchen* (Wash.). Under that rule *either* the prosecution selects one act (A or B) as the basis for a possible conviction *or* the court instructs the jurors that they must agree unanimously on one act (either A or B). Defendant in this case, however, did not request an election by the prosecution. Defense counsel did mention the advisability of a unanimity instruction during argument on his motion for a directed verdict at the close of the state's case; but the matter was abandoned because counsel did not submit a written instruction. *See* SCRA 1986, 5–608(D). Thus, our standard unanimity instruction, SCRA 1986, 14–6008, which was given in this case, sufficed. *See United States v. Phillips*, 869 F.2d 1361 (10th Cir.1988); *United States v. Pavloski,* 574 F.2d 933, 936 (7th Cir.1978). Moreover, nothing in the evidence distinguished among the various acts that could have been the basis for conviction on any particular count. Therefore, with respect to a conviction on any count, there would have been no rational basis for some jurors to predicate guilt on one act while other jurors predicated guilt on a different act. In that circumstance even in a jurisdiction that follows the "either/or" rule, failure to instruct the jury on unanimity is harmless error, *see State v. Loehner,* 42 Wash.App. 408, 711 P.2d 377 (1985), *cf. State v. Covington* (not plain error), if error at all, *see People v. Winkle,* 206 Cal. App.3d 822, 830, 253 Cal.Rptr. 726, 730 (2d Dist.1988) ("jury had no basis on which to distinguish between the acts about which [child victim] testified," so no need for una-

nimity instruction). *Cf. United States v. Robin* (no danger that defendant convicted by nonunanimous verdict because defendant admitted the charged acts and sole defense was lack of required mental state).

Our disagreement with *Van Hoek* and *Atkins* is not with their concerns about the need for proper notice of the charges and jury unanimity. Those are proper concerns with which the district court must deal, although not necessarily in the manner required by *Van Hoek* and *Atkins*. Our disagreement is with the statement that the failure of the prosecution to prove a distinct specific act requires dismissal of the charge for failure to prove guilt beyond a reasonable doubt. That proposition has a significantly greater impact than the propositions that the defendant must be provided adequate notice of the charges and that the verdict must be unanimous. Failure of notice or unanimity requires only reversal and remand for a new trial. When the state fails to prove guilt beyond a reasonable doubt, however, retrial is barred. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

*Van Hoek* states that the requirement of proof of a specific act is a "fundamental due process rule, steeped in antiquity." *Id.,* 200 Cal.App.3d at 817, 246 Cal.Rptr. at 356. *Accord People v. Atkins,* 203 Cal. App.3d at 22, 249 Cal.Rptr. at 867. But in the absence of any citation to authority by *Van Hoek,* we are at a loss to understand the exact scope of that "ancient" doctrine. Insofar as it applies to the present case, we reject it. Other districts of the California Court of Appeals have distinguished or rejected the Fifth District decisions in *Van Hoek* and *Atkins. See, e.g., People v. Moreno,* 211 Cal.App.3d 776, 259 Cal.Rptr. 800 (1st Dist.1989); *People v. Obremski,* 207 Cal.App.3d 1346, 255 Cal.Rptr. 715 (2d Dist. 1989); *People v. Slaughter,* 211 Cal.App.3d 577, 259 Cal.Rptr. 437 (3d Dist.), *cert. granted,* 261 Cal.Rptr. 704, 777 P.2d 1138 (1989); *People v. Sanchez,* 208 Cal.App.3d 721, 256 Cal.Rptr. 446 (4th Dist.1989). *But see People v. Jones,* 209 Cal.App.3d 89, 257 Cal.Rptr. 342 (4th Dist.), *cert. granted,* 260 Cal.Rptr. 182, 775 P.2d 507 (1989).

Even other panels in the Fifth District Court of Appeals have ignored *Van Hoek* and *Atkins* or expressed disagreement. *See People v. Jeff; People v. Luna,* 204 Cal.App.3d 726, 250 Cal.Rptr. 878 (1988); *People v. Vargas,* 206 Cal.App.3d 831, 253 Cal.Rptr. 894 (1988). We agree with the dictum in *Vargas* that disputes the holdings of *Van Hoek* and *Atkins. Vargas* argued that the state need only prove all the elements of the offense, and it is not an element of the crime that it have some distinguishing characteristic. The court also stated that the victim's inability to distinguish the individual acts did not render her testimony so inherently suspect as to be insufficient to support a conviction. The court concluded:

Finally, we reject the argument that failure to provide evidence that would permit a distinction between the numerous acts renders the evidence insufficient or insubstantial as to guilt of a particular act. The essence of this argument is that because the jury cannot unanimously single out a specific act and relate it to the charge, the evidence is not substantial as to guilt and, therefore, insufficient to support the conclusion that defendant committed the charged count. This argument, however, blurs the distinction between substantial evidence that defendant committed the charged act and the due process concerns of [two 1901 California cases]. To infer the inability to single out a particular act necessarily implies a jury could not conclude the defendant committed that act overlooks the very real possibility that the jury believed everything the victim said and thus agreed defendant committed all of the acts to which the victim testified. If the jury agreed defendant did all of the acts testified to, it necessarily agreed he committed the single act or acts charged. Because the victim's testimony was sufficient to establish defendant committed all the elements of all the acts testified to, if believed, it was sufficient to support a conviction on the charged counts within the meaning of *Burks* [*v. United States* (1978) 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1].

*Id.*, 206 Cal.App.3d at 853–54, 253 Cal.Rptr. at 906.

In the present case the victims gave specific accounts of the acts of CSP and CSC, and the locations in which the acts occurred (bedroom, bathroom, etc.). They simply could not provide specific dates, testifying only that the acts occurred two or more times per week. We uphold the verdict on each count because the evidence could convince a reasonable person beyond a reasonable doubt that defendant committed the charged offense during the alleged period. No juror need have a precise day in his or her own mind in order to vote for conviction. *See State v. Mankiller.* We recognize that the unanimity of the jury may be questioned when the evidence at trial in support of one count of the indictment relates to multiple acts at imprecise times. *Cf.* Note, *Right to Jury Unanimity on Material Fact Issues: United States v. Gipson*, 91 Harv.L.Rev. 499, 502 (1977) ("[O]nly common sense and intuition can define the specificity with which the jury must describe the defendant's conduct before it may convict."). That problem, however, is not a matter of the sufficiency of the evidence to prove guilt. Here the evidence was sufficient.

5. ADMISSION OF EVIDENCE CONCERNING OTHER ABUSE BY DEFENDANT

Defendant claims that admission of evidence regarding physical abuse of the two children and physical and sexual abuse of their older sister was extraneous and prejudicial, thereby depriving him of a fair trial.

Defendant objected at trial to testimony regarding defendant's physical abuse of the two children. The district court admitted this evidence pursuant to SCRA 1986, 11–404(B), which permits evidence of other bad acts for purposes other than "to prove the character of [defendant] in order to show that he acted in conformity therewith." A trial court may admit evidence under Rule 11–404(B) if it finds that its probative value outweighs any unfairly prejudicial effect. *See* R. 11–403; *State v. Beachum*, 96 N.M. 566, 632 P.2d 1204 (Ct. App.1981). Absent an abuse of discretion,

the district court's decision to admit such evidence will not be disturbed on appeal. *State v. Garcia*, 99 N.M. 771, 776, 664 P.2d 969, 974, *cert. denied*, 462 U.S. 1112, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983).

The evidence regarding physical abuse of the two children (and their older sister) was relevant to a disputed issue other than defendant's character. Defendant attempted to impeach the children's accusations by pointing out the long delay between the alleged acts and the children's reporting them. He claimed that the accusations resulted from the bitter divorce pending between the children's mother and defendant. The state responded that the children were fearful of their father. Evidence that the father had injured the children or that the children had knowledge of his injuring others would support the contention that they hesitated to accuse their father because of fear. Also, the evidence of defendant's acts of violence against the members of his family was admissible to prove his criminal intent, because one could infer that his purpose was to dissuade his family from reporting his offenses. Attempts to suppress evidence of crime are admissible to prove intent. *See* SCRA 1986, 14–5006 (uniform jury instruction regarding efforts to suppress evidence). The district court found this evidence to be more probative than prejudicial. We find no abuse of discretion in its ruling and therefore affirm the district court's admission of this evidence.

Defendant concedes that he failed to object at trial to the portions of the testimony relating to defendant's abuse of the children's sister. He asks this court to examine the issues under the fundamental error rule set forth in *State v. Vallejos*, 86 N.M. 39, 519 P.2d 135 (Ct.App.1974). *Vallejos* requires that the error deprive defendant of a fair trial. The only reference at trial to sexual abuse of the older child occurred when Dr. Lockwood was asked on direct examination to identify the materials she had reviewed in preparing to testify. She mentioned the older child's records from a group home and the Children's Psychiatric Hospital "relative to her treatment for the effects on her of physical and sexual abuse." This evidence of sexu-

al abuse was on its face admissible to explain the basis of expert opinion. *See* SCRA 1986, 11–703, –705. Although there may have been a gap in establishing the foundation for admission of the testimony (Dr. Lockwood did not explicitly state that the information regarding the older child formed part of the basis of her opinion), defendant failed to alert the prosecution to any possible failure in establishing the foundation. Such matters preliminary to admissibility are often omitted by trial counsel, because they expect opposing counsel to concede admissibility. We would be loath to permit counsel to sandbag an opposing party by withholding until appeal objections on such a matter. Moreover, we note that the testimony regarding sexual abuse of the older child was extremely brief; no details were provided; the abuser was not even named. That testimony did not deprive defendant of a fair trial.

## CONCLUSION

Defendant's convictions and sentences are affirmed.

IT IS SO ORDERED.

DONNELLY and CHAVEZ, JJ., concur.