STATE of Alaska, Petitioner,

v.

Walter Lee WARD, Respondent.

No. A–7546.

Court of Appeals of Alaska.

Feb. 9, 2001.

William H. Hawley, Jr., Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Petitioner.

Frederick T. Slone, Kasmar & Slone, Anchorage, for Respondent.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

COATS, Chief Judge.

Walter Lee Ward was charged with felony driving while intoxicated (DWI).[1] The district court granted Ward's motion to suppress his breath test results. The court

1. AS 28.35.030(a), (n).

ruled that the state had interfered with Ward's rights—based on evidence that the police had affirmatively told Ward that his blood sample would be "stored as evidence" until Ward or his attorney requested that it be analyzed, and that the police had then failed to ensure that the blood sample was preserved.

The state petitioned us to review this ruling, and we granted review. For the reasons set forth below, we vacate the district court's decision and we remand Ward's case to that court for further consideration.

## I. Facts and Proceedings

On January 22, 1999, Anchorage Police Officer Nix arrested Ward for DWI. Ward was brought to a police substation and was given a breath test. As part of the DWI processing, Ward was told that he could have an independent test, and if he so desired, the police would arrange to have Ward's blood drawn at government expense for that purpose. Officer Nix read Ward a "Notice of Right To Independent Chemical Test," which stated that "[t]he blood will be stored as evidence until you or your attorney make arrangements for its analysis." When Ward indicated that he wanted a blood sample drawn at government expense, he was taken to Alaska Regional Hospital, where a sample of his blood was drawn.

On March 16, 1999, Ward was indicted for felony DWI. One week later, Ward retained attorney Frederick T. Slone to defend him. Ward's trial was originally scheduled for June 28, 1999, but the trial was later continued until August 9, 1999. During the time after his arrest and before his trial originally was supposed to start, neither the state nor Ward's attorney arranged to have Ward's blood analyzed.

On June 29, 1999, Ward's attorney, Slone, contacted Alaska Regional Hospital and asked them to analyze Ward's blood sample for alcohol content. Hospital personnel replied that they had destroyed Ward's blood sample on June 5, 1999, in accordance with their policy of destroying such samples if no request to analyze them is received within three months.

Almost three months later, on September 22, 1999, Ward moved to suppress his breath test result because his blood sample had been destroyed by Alaska Regional Hospital. At an evidentiary hearing held on October 15, 1999, Steven Keith, a chemical supervisor at Alaska Regional Hospital, acknowledged that blood can be preserved for more than twelve months. However, Keith reiterated the hospital's policy of destroying blood samples after three months unless a party contacts the hospital. Keith noted that, despite the three-month policy, Ward's blood sample was actually held for almost four and one-half months before it was destroyed.

At the same hearing, Ward presented evidence that he had relied on the police officer's statement that the blood would be preserved until someone asked to test it—and that, based on this statement, he believed that his blood sample would be stored until after trial.

Based on this evidence, District Court Judge Gregory J. Motyka suppressed the breath test results. Judge Motyka found that Ward was misled when the police told him that his blood would be stored as evidence until he or his attorney made arrangements for its analysis—when, in fact, the hospital's policy of throwing out blood samples after three months meant that Ward had only a limited period of time within which to request analysis of his blood sample. Judge Motyka concluded that Ward and his attorney could reasonably infer that the blood sample would be kept at least until the case was resolved. Judge Motyka also found no evidence to indicate that Ward's failure to request the analysis until late June 1999 was a tactical ploy.

Based on this evidence, Judge Motyka ruled that, if the police chose to have Alaska Regional Hospital draw the blood samples from DWI arrestees, the state either was obliged to arrange for preservation of the blood samples until a defendant's trial or, at the very least, was obliged to notify defendants of the hospital's policy that blood samples would be kept no longer than ninety days. Because the state had failed to do either, Judge Motyka ruled that the state had improperly interfered with Ward's

rights. He therefore granted Ward's motion to suppress the breath test results.

## II. Discussion

### A. Is the state responsible for the destruction of Ward's blood sample?

Judge Motyka recognized that the police had taken Ward to the hospital for the drawing of a blood sample. But he nevertheless concluded that the state had violated Ward's rights because the police told Ward that his blood sample would be stored as evidence until Ward or his attorney arranged for its analysis, and failed to ensure that the blood sample was retained and notify Ward that he had a limited period of time in which to request analysis of the sample.

In reaching this conclusion, Judge Motyka relied particularly on the Alaska Supreme Court's decision in *Thorne v. Department of Public Safety.*[2] In *Thorne,* the police destroyed a video tape of the defendant performing field sobriety tests. The videotape was destroyed after the criminal charges against the defendant were resolved, but before his drivers' license revocation hearing. The supreme court held that the defendant's due process rights were violated when the videotape was destroyed prior to the license revocation hearing.[3] The court found that "where the burden of preservation is so minimal, and the evidence is of even slight potential relevance, the state bears a heavy burden in justifying its destruction."[4] The court further noted that "[e]ven if preserving videotapes of post-arrest field sobriety tests for use at administrative hearings imposes an incremental burden on the state, we believe that an accused's due process rights outweigh this consideration."[5]

The state claims that *Thorne* is distinguishable from Ward's case because *Thorne*

involved the government's destruction of a videotape that the government created, owned, and possessed. In Ward's case, the state points out, the blood sample did not belong to the government, it was drawn and retained by a private hospital, and the government had nothing to do with its destruction. Relying on *Bradley v. State,*[6] the state argues that it should not be held responsible for the hospital's actions.

In *Bradley* we rejected the argument that the state has a positive duty to preserve a DWI defendant's blood sample that it neither requested nor possessed.[7] But Ward's case presents a different question from *Bradley* because Ward's blood sample was not drawn by the hospital for medical reasons. Instead, the sampling was performed at Ward's request pursuant to his right to preserve this potentially exculpatory evidence.[8]

■ The state argues that due process requires only that DWI defendants have "a reasonable opportunity to challenge" the state's breath test,[9] and that four and a half months is a reasonable opportunity. But the state's argument misses the point. It may be that a hospital policy of holding blood samples for ninety days is consistent with the defendant's due process rights. But in Ward's case, a police officer affirmatively told him that there was no time limit—no need to act promptly. Having made this representation, the state was obliged to honor it. That is, the state was obliged to make an effort to ensure that Ward's blood sample was preserved as promised.

### B. What is the appropriate remedy?

■ When the state destroys or loses evidence in its possession, the trial court is not automatically required to impose sanctions.[10] Rather, the court must "carefully

2. 774 P.2d 1326 (Alaska 1989).

3. *See id.* at 1330.

4. *Id.* at 1331 (footnotes omitted).

5. *Id.*

6. 662 P.2d 993 (Alaska App.1983).

7. *See Bradley,* 662 P.2d at 995.

8. *See Snyder v. State,* 930 P.2d 1274, 1277 (Alaska 1996) (It is a fundamental tenet of due process that a person accused of a crime has a right to attempt to obtain exculpatory evidence.).

9. *See Crim v. Anchorage,* 903 P.2d 586, 587–88 (Alaska App.1995).

10. *See Putnam v. State,* 629 P.2d 35, 43 (Alaska 1980), *rejected on other grounds in Stephan v. State,* 711 P.2d 1156, 1163 (Alaska 1985); *see*

examine the circumstances surrounding the state's violation of its duty of preservation." [11] Specifically, the court must consider the degree of culpability on the part of the state, the importance of the lost evidence, the prejudice suffered by the defendant, and the evidence of guilt adduced at the hearing or trial.[12] In *Thorne,* the supreme court considered these factors and determined that the appropriate sanction for the state's premature destruction of the videotape of the defendant's field sobriety tests was to remand with directions to the hearing officer to presume that the videotape would have been favorable to the defendant.[13]

 It is well-established that when evidence is destroyed in bad faith or in "a deliberate attempt to avoid production, sanctions will normally follow." [14] But when evidence is "lost or destroyed in good faith, the imposition of the sanctions will depend upon the degree to which the defendant has been prejudiced." [15] As the supreme court noted in *Putnam:*

> In cases where the defendant cannot reasonably be said to have been prejudiced by the state's good faith failure to preserve the evidence, sanctions will generally not be appropriate. Where, however, the defendant has suffered prejudice, sanctions will generally be warranted. Just what sanction is appropriate in a given case is best left to the sound discretion of the trial court.[16]

In Ward's case, there is no evidence that the state intentionally destroyed Ward's blood sample. At most, the evidence suggests that the state was negligent in not telling Ward that there was a need to act promptly to preserve and test the sample. Thus, the sanction to be imposed in Ward's case, if any, will depend in large part on the degree of prejudice suffered by Ward.

It further appears that, if a sanction is to be imposed, *Thorne* establishes the presumption that the appropriate sanction is a jury instruction modeled after the relief granted in *Thorne*—an instruction telling the jury to assume that the missing evidence would have been favorable to Ward.[17]

We therefore VACATE Judge Motyka's decision and REMAND this case to the district court for reconsideration of its decision in light of this opinion.

We do not retain jurisdiction of this case.

also *Abdulbaqui v. State,* 728 P.2d 1211, 1217–18 (Alaska App.1986).

11.  *Putnam,* 629 P.2d at 43 (footnote omitted).

12.  *See Thorne,* 774 P.2d at 1331; *Putnam,* 629 P.2d at 44.

13.  *See Thorne,* 774 P.2d at 1331.

14.  *Putnam,* 629 P.2d at 43; *see also Abdulbaqui,* 728 P.2d at 1218.

15.  *Putnam,* 629 P.2d at 43 (footnote omitted).

16.  *Id.* at 43 (citations omitted).

17.  *See Thorne,* 774 P.2d at 1331–32.