This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                       **NO. 29,285**

**ROGER LEATHERS,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth H. Martinez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Office of Craig C. Kling
Craig C. Kling
San Diego, CA

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

Roger Leathers (Defendant) was convicted of two counts of first degree criminal sexual penetration (child under thirteen) (CSP I), one count of attempted CSP I, four counts of second degree criminal sexual contact of a minor (child under thirteen) (CSCM II), two counts of third degree CSCM (child under thirteen) (CSCM III), three counts of contributing to the delinquency of a minor, one count of first degree kidnapping, one count of second degree kidnapping, and one count of bribery of a witness. Defendant raises five issues on appeal: (1) the district court erred in allowing M.R. (Victim) to hold a comfort toy while testifying and for failing to grant Defendant's motion for a mistrial due to prosecutorial misconduct; (2) Defendant's right to due process was violated by the multiple charges over multiple charging periods; (3) there was insufficient evidence for Defendant's convictions for CSCM and kidnapping; (4) the district court improperly allowed the State to amend Count 1 of the indictment to change the method of penetration for CSP I; and (5) Defendant received ineffective assistance of counsel. We conclude that there was insufficient evidence to support Defendant's convictions for two counts of CSCM II and two counts of CSCM III, as charged in Counts 7, 9, 10, and 11. Accordingly, we reverse Defendant's convictions for two counts of CSCM II and two counts of CSCM III. We affirm Defendant's remaining convictions.

**I.  BACKGROUND**

We briefly summarize the facts relevant to resolving the issues raised on appeal and will provide additional facts in our analysis of each issue. Victim is Defendant's niece. On November 30, 2008, Defendant was charged with two counts of CSP I, one count of attempted CSP I, four counts of CSCM II, two counts of CSCM III, three counts of contributing to the delinquency of a minor, one count of first degree kidnapping, one count of second degree kidnapping, and one count of bribery of a witness. The charges of CSP, attempted CSP, contributing to the delinquency of a minor, and bribery of a witness covered the entire indictment period from August 11, 2002, to August 10, 2005, but the kidnapping and CSCM counts were divided into two different charging periods within the indictment period. The indictment period covered acts that allegedly occurred between Victim's fifth birthday and the day before her eighth birthday. The jury convicted Defendant on all counts. Defendant was sentenced to forty-nine and one-half years of incarceration, thirty-one and one-half years of which were suspended, for a total term of incarceration of eighteen years. Defendant now appeals all of his convictions.

## II.    DISCUSSION

### A.    The District Court's Rulings Involving the Comfort Toy

Defendant argues that the district court abused its discretion by failing to question Victim about her need to hold a comfort toy while testifying. Additionally,

3

Defendant contends that the court erred by denying Defendant's motion for a mistrial based on the prosecutor's failure to inform the district court that Victim intended to enter the courtroom with a toy.

When Victim was called to the stand to testify, she was holding a small stuffed animal. In a bench discussion, Defendant acknowledged that Victim might need the stuffed animal psychologically, but objected to Victim holding the stuffed animal on the basis that it was an attempt to garner sympathy for Victim. The State argued that there was no attempt to garner sympathy from the jury. Instead, the State asserted that Victim was "very scared" and had already been crying before starting to testify, so the State did not "feel it was appropriate to rip [the stuffed animal] out of her hand right before [Victim was] about to come into the courtroom."

The district court asked Victim's age, and the State responded that Victim was eleven years old. For accuracy, we note that Victim was actually ten years old at the time of trial. The district court observed that Victim was "tiny for her age" and that she was "clearly upset." The court concluded that allowing Victim to hold the stuffed animal "[was] not so prejudicial or unduly so, and it [might] assist [Victim] in getting through the testimony." The court further reasoned that taking the stuffed animal away at that point would cause a scene and be inappropriate.

Defendant then moved for a mistrial because the State knew that the stuffed animal was in Victim's hands when she came into the courtroom and did not attempt to take it away from Victim. The district court observed that Victim was "clearly of tender years," Victim was "already tearful," and it was clear that Victim was "going to have a difficult time at best and may or may not be able to complete her testimony or even initiate it." As a result, the court found that under the circumstances, it was appropriate to allow Victim "to keep the [stuffed] animal for some means of comfort during the testimony." The State further offered to ask Victim to keep the stuffed animal in her lap so that it would not be visible, and the court agreed that requesting that Victim hold the stuffed animal in her lap would be appropriate.

**1.       The District Court's Ruling Permitting Victim to Hold the Comfort Toy**

We review the district court's decision to allow Victim to hold a comfort toy while testifying for an abuse of discretion. *See State v. Marquez*, 1998-NMCA-010, ¶ 13, 124 N.M. 409, 951 P.2d 1070. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Otto*, 2007-NMSC-012, ¶ 9, 141 N.M. 443, 157 P.3d 8 (internal quotation marks and citation omitted).

Defendant relies on *Marquez* to argue that the district court abused its discretion by failing to question Victim or allow Defendant to question Victim outside of the presence of the jury to determine whether any prejudice to Defendant was outweighed by the comfort to Victim in holding the stuffed animal. *See* 1998-NMCA-010, ¶ 15. In *Marquez*, the district court allowed a twelve-year-old victim of CSP and kidnapping to testify while holding a teddy bear. *Id.* ¶ 1. This Court affirmed the district court's ruling and concluded that the district court "properly balanced prejudicial effect of the teddy bear against the necessity of the teddy bear's calming effect." *Id.* ¶ 17. In doing so, we reasoned that the district court questioned the victim, observed her demeanor, and made a finding that she would be more comfortable with the teddy bear during testimony. *Id.*

We conclude that the district court properly balanced Victim's need for the stuffed animal against any potential prejudice to Defendant by observing Victim's tearful demeanor, questioning the parties about Victim's age and need for the stuffed animal, considering the effect of taking the stuffed animal away from Victim, and making a finding that any potential prejudice to Defendant was outweighed by Victim's need for the stuffed animal in helping her to complete her testimony. Furthermore, the court minimized any prejudice to Defendant by asking Victim to hold the stuffed animal in her lap so that it would not be visible to the jury during her

testimony. Although neither the court nor Defendant questioned Victim about her need for the stuffed animal, Defendant failed to request any questioning of Victim and did not object to the court basing its findings solely on its observations of Victim. Consequently, we conclude that Defendant failed to preserve his argument that the court was required to question Victim. *See State v. Tom*, 2010-NMCA-062, ¶ 9, 148 N.M. 348, 236 P.3d 660 ("In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the district court of the nature of the claimed error and invokes an intelligent ruling thereon."). As a result, we affirm the district court's ruling allowing Victim to testify while holding a small, stuffed animal in her lap.

**2.      The District Court's Denial of Defendant's Motion for a Mistrial**

Defendant asserts that the district court erred in denying Defendant's motion for a mistrial based on the prosecutor's failure to inform the court that Victim was going to enter the courtroom with the stuffed animal. We review a district court's denial of a motion for mistrial for an abuse of discretion. *State v. McDonald*, 1998-NMSC-034, ¶ 26, 126 N.M. 44, 966 P.2d 752.

"Prosecutorial misconduct occurs when the prosecutor's improprieties had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. O'Neal*, 2008-NMCA-022, ¶ 29, 143 N.M. 437, 176

P.3d 1169 (internal quotation marks and citation omitted). Even if we assume without deciding that a prosecutorial impropriety occurred, Defendant fails to articulate how the stuffed animal "had such a persuasive and prejudicial effect on the jury's verdict that [he] was deprived of a fair trial." *Id.* As previously discussed, the district court determined that allowing Victim to hold the stuffed animal was not unduly prejudicial to Defendant and that it was appropriate under the circumstances to allow Victim to hold the stuffed animal in order to help Victim to initiate and complete her testimony. Furthermore, at the State's own suggestion, the State further minimized any possible prejudice to Defendant by instructing Victim to hold the stuffed animal in her lap so that it would not be visible to the jury while she testified. Finally, Defendant fails to identify any further reference to the stuffed animal in the record. As a result, we conclude that the district court did not abuse its discretion in denying Defendant's motion for a mistrial based on prosecutorial misconduct.

**B.     Due Process**

Defendant contends that the multiple charges over multiple charging periods violated his right to due process. Defendant asserts that his due process claim was preserved through his motion to dismiss the indictment after the State rested its case. The record reflects that Defendant moved for a directed verdict on the entire indictment on due process and other grounds, arguing that indictment did not give

8

Defendant proper notice so that he could defend against the charges. Ultimately, the district court denied Defendant's motion for a directed verdict, reasoning in pertinent part that although Defendant was certainly apprised of the nature of the case after pretrial interviews, Defendant failed to raise a due process claim at that time and failed to move for the district court to order a more particular allegation or bill of particulars.

We conclude that Defendant failed to preserve his due process claim, and as a result, we do not address Defendant's due process arguments on appeal. *See State v. Dombos*, 2008-NMCA-035, ¶ 21, 143 N.M. 668, 180 P.3d 675 (declining to address the defendant's due process arguments on appeal where the defendant did not preserve them). "In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the district court of the nature of the claimed error and invokes an intelligent ruling thereon." *Tom*, 2010-NMCA-062, ¶ 9. Defendant's motion for a directed verdict did not timely preserve his due process claim regarding the length of the charging period and distinctiveness of the charges. *See State v. Nichols*, 2006-NMCA-017, ¶¶ 26, 28-29, 139 N.M. 72, 128 P.3d 500 (reasoning that the defendant's motion for a directed verdict was insufficient to preserve his arguments that he did not receive fair notice of the charges and that the broad period of time covered in the jury instructions violated his right to due process). Defendant's due process claim was untimely because it occurred after the time that the State and

the district court could have avoided or cured any error in the indictment. *See State v. Trujillo*, 119 N.M. 772, 776, 895 P.2d 672, 676 (Ct. App. 1995) (reasoning that a timely objection is necessary to properly preserve an issue in order to give the opposing party an opportunity to cure any defect); *see also Gracia v. Bittner*, 120 N.M. 191, 197, 900 P.2d 351, 357 (Ct. App. 1995) (reasoning that we generally "should not reverse on an issue raised for the first time on appeal after the opportunity has passed to timely correct any error presented by the issue" because such a holding "would countenance sandbagging by trial attorneys" and waste of judicial resources). As a result, we decline to address Defendant's due process arguments on appeal.

**C.    Sufficiency of the Evidence**

Defendant argues that there was insufficient evidence to convict him of two counts of CSCM III, four counts of CSCM II, one count of first degree kidnapping, and one count of second degree kidnapping. Specifically, Defendant contends that there was insufficient evidence to prove when these offenses occurred because the evidence at trial did not support splitting these charges into two different charging periods.

"The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v.*

*Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted). Under this standard, "we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "We do not reweigh the evidence or substitute our judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179. "In reviewing the evidence, the relevant question is whether *any* rational jury could have found each element of the crime to be established beyond a reasonable doubt." *Riley*, 2010-NMSC-005, ¶ 12 (internal quotation marks and citation omitted). "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct. App. 1986). Finally, we do not consider the merit of evidence that may have supported a different result. *Gipson*, 2009-NMCA-053, ¶ 4.

The State split the charges into two charging periods based on the February 3, 2004, effective date of legislative amendments to the CSCM and kidnapping statutes. *See* 2003 N.M. Laws (1st S.S.), ch. 1, §§ 2, 4 (changing CSCM of a minor under thirteen years of age from a third degree felony to a second degree felony and also

altering the punishment for kidnapping to indicate that kidnapping is a first degree felony if a defendant inflicts a sexual offense on the victim). The first charging period covered the period on or between Victim's fifth birthday in August 2002 and the legislative amendments in February 2004. During the first charging period, the State was required to prove that one incident of kidnapping occurred, one incident of CSCM III involving Victim's groin/genital occurred, and one incident of CSCM III involving Victim's buttocks occurred. The second charging period covered the period from February 2004 to the day before Victim's eighth birthday in August 2005. During the second charging period, the State was required to prove that one incident of kidnapping occurred where a sexual offense was actually inflicted, two incidents of CSCM II occurred involving the touching or application of force to Victim's vagina, and two incidents of CSCM II occurred involving the touching or application of force to Victim's buttocks.

Victim testified that she went over to Defendant's house when she was in kindergarten, first, second, and third grade. Victim would play with her cousins and "probably spend the night." When Victim spent the night, she would sleep on the floor, in one of the beds, or on the couch. Defendant "would wake [Victim] up in the middle of the night when [she] was sleeping, and he would take [her] into his room." When asked how he would get her to his room, Victim testified, "I think, but I'm not

12

sure, he would grab me by the arm." Defendant would take off his clothes and tell Victim to take off her clothes, and she would lie face down on the bed. Defendant would "get on top of [Victim]" and then start touching Victim with his hands "[a]ll over [her] body." Victim testified that Defendant touched her shoulders, arms, private, ankles, and bottom. Victim also testified regarding digital penetration of her vagina by Defendant, anal penetration by Defendant, and that Defendant would make her perform fellatio on him.

When asked how many times "this happen[ed] in the bedroom," Victim responded "[m]ore than three times," but she did not know how many times. When asked "[w]as there anyplace else where things like this happened," Victim responded, "One time in the bathroom, and it was really rare on the couch." Victim then described an act of fellatio that occurred in the bathroom and stated that only one incident occurred in the bathroom. Victim further stated, "Whenever it was in the nighttime when I would sleep on the couch, he would do the exact same thing as he – it's really hard to remember." Victim could not further specify what happened on the couch.

When asked how often "something like this [would] happen," Victim responded, "Whenever I would spend the night." Victim testified that the same things did not always occur. Victim further testified that the conduct began when she was

five years old and about to turn six years old, and the conduct ended when she was approximately eight years old. In a statement to a counselor in 2006, Victim similarly indicated that the abuse started when she was five years old and about to turn six years old, and "[t]he last time it happened was when [Victim] was about to turn [eight] just before [her] birthday." Victim told the counselor, "Every time I would stay over [at] my cousins['] house he would do it to me. He would abuse me like parent[s] do like if they want a baby. . . . He would try and put it through my private hole. . . . It would not fit." (admitted into evidence)] Victim was seven years old when she typed a letter to Dr. Phil, which stated that Defendant was "having sex with [her]."

Victim's mother testified that they were at Defendant's house "all the time" and that Victim was there at times when her mother was not present. Victim lived in Defendant's home for three or four weeks in 2003 when Victim was five years old. When Victim was not living with Defendant, Victim would go over to Defendant's house after school and spend the night there every weekend when she had a break from school. Victim spent nights at Defendant's home when she was in kindergarten, first, second, and third grade.

Defendant testified that Victim lived at his house and also spent the night at his house "all the time." Defendant was responsible for watching the children while his wife took night classes. When Victim lived at Defendant's home, Victim had her own

14

bed in his bedroom. Defendant's wife similarly testified that Victim lived at their house at one point and also spent the night at their house regularly.

**1.     Two Kidnapping Convictions**

The two counts of kidnapping covered the two different charging periods. To convict Defendant of kidnapping under Count 3, the State was required to prove the following elements beyond a reasonable doubt:

> 1. [Defendant] took, restrained, confined or transported [Victim] by force, intimidation or deception;
>
> 2. [Defendant] intended to hold [Victim] against [Victim's] will to inflict death, physical injury or a sexual offense on [Victim];
>
> 3. [Defendant's] act was unlawful;
>
> 4. This happened in New Mexico on or between the 3rd day of February, 2004 and the 10th day of August, 2005.

*See* UJI 14-403 NMRA. Count 3 also contained a special verdict question to determine whether Defendant actually committed a sexual offense on Victim. Count 4 covered the earlier charging period. To convict Defendant of kidnapping under Count 4, the State was required to prove that "[Defendant] restrained or confined [Victim] by force, intimidation or deception . . . on or between the 11th day of August, 2002 and the 3rd day of February, 2004." *See* UJI 14-403 NMRA 2003.

Defendant contends that there was insufficient evidence to prove "when" the two kidnapping incidents occurred. Defendant does not argue that the evidence was

15

insufficient to prove any of the remaining elements of the kidnapping charges. As a result, we only address whether there was sufficient evidence to prove beyond a reasonable doubt that one incident of kidnapping occurred on or between August 2002 and the end of the first charging period in February 2004, and a second incident of kidnapping occurred between February 2004 and the day before Victim's eighth birthday in August 2005. *See State v. Torres*, 2005-NMCA-070, ¶ 34, 137 N.M. 607, 113 P.3d 877 (stating that this Court will not address issues unsupported by argument and authority).

Victim testified that Defendant would wake her up in the middle of the night while she was sleeping, grab her arm, and take her into his bedroom. Victim further testified that Defendant committed various sexual offenses in the bedroom. Victim stated that the first incident occurred when she was five years old and about to turn six years old, and the last incident occurred when she was seven years old and about to turn eight years old. Additionally, Victim's mother, Defendant, and Defendant's wife provided corroborating evidence by testifying that Victim spent the night at Defendant's house regularly during the time from when she was five years old to eight years old. The first incident sufficiently identifies an act of kidnapping when Victim was five years old and fell within the first charging period. The last incident sufficiently identifies an act of kidnapping when Victim was nearly eight years old

16

and fell within the second charging period. We conclude that there was sufficient evidence that one incident of kidnapping occurred during the first charging period when Victim was five years old, and a separate incident of kidnapping occurred during the second charging period when Victim was nearly eight years old. As a result, we affirm Defendant's convictions for kidnapping in Counts 3 and 4.

**2.      Six CSCM Convictions**

The CSCM counts were similarly split into the same two charging periods and were further differentiated based on the type of touching. To convict Defendant of CSCM II under Counts 6 and 7, the State was similarly required to prove the following elements beyond a reasonable doubt:

> 1.  [Defendant] touched or applied force to the unclothed vagina of [Victim];
>
> 2.  [Victim] was 12 years of age or younger;
>
> 3.  [Defendant's] act was unlawful;
>
> 4.  This happened in New Mexico on or between the 4th day of February, 2004 and the 10th day of August, 2005.

*See* UJI 14-925 NMRA. Counts 8 and 9 of CSCM II required the State to prove that "[Defendant] touched or applied force to the unclothed buttocks of [Victim] . . . on or between the 4th day of February, 2004 and the 10th day of August, 2005." The only

17

difference between Counts 6 and 7 versus Counts 8 and 9 was the different part of Victim's body alleged to have been touched during the later charging period.

The two CSCM III charges in Counts 10 and 11 covered the earlier charging period. To convict Defendant of CSCM III under Count 10, the State was required to prove that "[Defendant] touched or applied force to the groin and/or genital area of [Victim] . . . on or between the 11th day of August, 2002 and the 3rd day of February, 2004." *See* UJI 14-925 NMRA 2003. Similarly, the only variation in Count 11 involved a different part of Victim's body and the State was required to prove that "[Defendant] touched or applied force to the buttocks of [Victim]" during the earlier charging period.

Defendant also contends that there was insufficient evidence to prove "when" the six incidents of CSCM charged in Counts 6 through 11 occurred. Again, Defendant does not argue that the evidence was insufficient to prove any of the remaining elements of his convictions for CSCM. As a result, we only address whether there was sufficient evidence to prove beyond a reasonable doubt that one incident of CSCM involving the touching or the application of force to Victim's groin/genital and one incident involving the touching or the application of force to Victim's buttocks occurred on or between August 2002 and the end of the first charging period in February 2004. *See Torres*, 2005-NMCA-070, ¶ 34. Additionally,

18

we examine whether there was sufficient evidence to prove beyond a reasonable doubt that two incidents involving the touching or the application of force to Victim's vagina and two incidents involving the touching or the application of force to Victim's buttocks occurred between February 2004 and the end of the second charging period in August 2005.

The State argues that the evidence shows that Defendant touched Victim's vagina and buttocks numerous times between Victim's sixth and eighth birthday, and at the very least, testimony supported two convictions for conduct occurring prior to February 2004 and four convictions for conduct occurring after February 2004. In closing argument below, the State argued that Victim's testimony regarding the digital penetration supported the first count of CSP, the fellatio supported the second count of CSP, and the attempted CSP was supported by Victim's statement to her counselor that Defendant tried to "put it through [her] private hole," but "it would not fit." The State further argued that the six counts of CSCM were supported by Victim's testimony that Defendant touched her all over her body, including her private and bottom. The State contended that this touching "happened every time they were in the bedroom, so more than three times, so that you can use those acts more than three times or four times, and we've got one, two—two or three counts for the touching of [the] vagina, and one count for touching the genitals." The State argued that the

19

touching of Victim's buttocks occurred either while Defendant was touching Victim all over her body or when Defendant laid on top of Victim. The State explained the relevance of Victim's fifth and eighth birthday in the charging periods and also that Victim was six years old in February 2004, but did not further differentiate which acts of CSCM were alleged to have occurred in which time periods.

This lack of any specificity regarding time frames for the alleged acts of CSCM is troubling. The split between the charging periods was not defined by the testimony or any event that was factually related to the acts of CSCM. The only difference between the charging periods was the statutory change that occurred in February 2004. During deliberations, the jury asked about the significance of February 2004 in the date ranges of the counts, and after conferring with the parties, the district court instructed the jury that they had heard all of the evidence in this matter and were to rely on their memories of that evidence.]

We conclude that insufficient evidence was presented to prove beyond a reasonable doubt that four of the alleged incidents of CSCM occurred during the two charging periods in this case. Although the six counts were divided into the two charging periods that alleged two separate incidents of touching in the earlier charging period and four separate incidents of touching in the later charging period, the evidence at trial supported only a general, non-specific course of CSCM that started

20

at the time Victim was five years old and ended just before Victim turned eight years old. Victim testified that the touching began when she was five years old and ended just before she turned eight years old, but Victim was unable to identify six separate incidents of touching. Instead, Victim provided general testimony as to what body parts were touched at some point, stated that something happened every time she spent the night at Defendant's house, and indicated that she went to Defendant's house when she was in kindergarten, first, second, and third grade. She also testified that the same things did not always occur. As a result, the State failed to present evidence that six separate incidents of CSCM occurred. Instead, the evidence demonstrated a non-specific continuing course of CSCM involving the touching of Victim's vagina and buttocks from August 2002 to August 2005. *See State v. Tafoya*, 2010-NMCA-010, ¶¶ 24-25, 147 N.M. 602, 227 P.3d 92 (holding that the evidence supported one count of criminal sexual penetration involving vaginal penetration and one count involving anal penetration where the alleged victim described a pattern of vaginal penetration and a pattern of anal penetration that "each happened lots of times, without relating any act to a specific incident"), *cert. denied*, 2009-NMCERT-012, 147 N.M. 600, 227 P.3d 90; *State v. Dominguez*, 2008-NMCA-029, ¶¶ 2, 11, 143 N.M. 549, 178 P.3d 834 (concluding that "the State must either charge ongoing conduct as a single offense or charge a defendant with and provide evidence of distinct offenses that will support

21

multiple counts" and that the State properly dismissed the CSCM "counts for which the State could offer no specific facts to distinguish them from any other count").

We recognize that "[n]o juror need have a precise day in his or her own mind in order to vote for conviction." *State v. Altgilbers*, 109 N.M. 453, 471, 786 P.2d 680, 698 (Ct. App. 1989). As a result, this Court has held that sufficient evidence for a conviction existed where the evidence supported that the charged acts of CSCM occurred during the charging period. *See Gipson*, 2009-NMCA-053, ¶ 14 (holding that there was sufficient evidence to support the defendant's convictions of one count of CSCM for each month in a six-month period when the victim clearly testified that acts of CSCM occurred every time she accompanied the defendant to the dump and that she accompanied him to the dump every two to three weeks in that six-month period); *State v. Dietrich*, 2009-NMCA-031, ¶¶ 58-61, 145 N.M. 733, 204 P.3d 748 (affirming the defendant's convictions for CSCM where the testimony regarding the dates that the acts occurred was indefinite but placed the incidents within the four-month charging period); *Altgilbers*, 109 N.M. at 471, 786 P.2d at 698 (affirming the defendant's convictions for CSP and CSCM where the victims gave specific accounts of the acts and testified that the acts occurred two or more times per week during the charging periods).

In contrast to *Gipson* and *Altgilbers*, Defendant's charges of CSCM were not divided into separate charging periods to reflect the evidence, but instead were divided into two charging periods based upon an unrelated statutory change that increased punishment available for charges of CSCM after February 3, 2004. *See Gipson*, 2009-NMCA-053, ¶ 14; *Altgilbers*, 109 N.M. at 464, 786 P.2d at 691. Other than the starting and ending dates for the alleged acts of CSCM, the State did not present any distinguishing evidence to show that six separate acts of CSCM occurred. Although Victim indicated that something happened every time she stayed over at Defendant's house, her testimony was unclear as to whether an act constituting CSCM occurred during each of those visits. As a result, we determine that there was insufficient evidence to prove beyond a reasonable doubt that six separate acts of CSCM occurred. Instead, the evidence supported one course of conduct of CSCM involving touching of Victim's vagina and one course of conduct of CSCM involving touching of Victim's buttocks.

We conclude that there was insufficient evidence for Defendant's convictions for two counts of CSCM II and two counts of CSCM III. Based upon Victim's testimony that the pattern of CSCM continued after February 2004 and ended in August 2005, sufficient evidence supported Defendant's convictions for one count of CSCM II for a course of conduct involving touching Victim's vagina and one count

23

of CSCM II for a course of conduct involving touching of Victim's buttocks. As a result, we affirm Defendant's convictions for CSCM II set forth in Counts 6 and 8. We reverse Defendant's remaining convictions for CSCM II and III in Counts 7, 9, 10, and 11, and we remand to the district court for dismissal of Counts 7, 9, 10, and 11.

**D.      Amendment of Count 1 of the Indictment**

Defendant argues that the district court erred by allowing the State to amend Count 1 of the indictment after the close of the State's evidence to change the method of penetration from penile to digital penetration.  Specifically, Defendant contends that the amendment changed an element of the offense of CSP I and that the change was not a minor change that he could have foreseen during trial.

We review an amendment to the criminal information under Rule 5-204(C) NMRA de novo. *See State v. Roman*, 1998-NMCA-132, ¶ 8, 125 N.M. 688, 964 P.2d 852 (recognizing that a de novo standard of review applies to the interpretation and application of Rule 5-204).  Rule 5-204(C) provides the following:

> No variance between those allegations of a complaint, indictment, information or any supplemental pleading which state the particulars of the offense, whether amended or not, and the evidence offered in support thereof shall be grounds for the acquittal of the defendant unless such variance prejudices substantial rights of the defendant.  The court may at any time allow the indictment or information to be amended in respect to any variance to conform to the evidence.  If the court finds that the defendant has been prejudiced by an amendment, the court may postpone

the trial or grant such other relief as may be proper under the circumstances.

Rule 5-204(C) gives the district court discretion to allow the State "to amend the indictment to conform to the evidence at any time prior to the verdict." *Dombos*, 2008-NMCA-035, ¶ 25. However, "Rule 5–204(C) [cannot] be used to impose an *entirely new charge* against a defendant after the close of testimony." *State v. Branch*, 2010-NMSC-042, ¶ 19, 148 N.M. 601, 241 P.3d 602 (internal quotation marks and citation omitted). "[A] variance is not fatal unless the accused cannot reasonably anticipate from the indictment what the nature of the proof against him will be." *Id.* (internal quotation marks and citation omitted).

Pursuant to Rule 5-204(C), we examine whether Defendant's substantial rights were prejudiced by the district court's ruling that allowed the State to amend the method of penetration to conform to the evidence at trial. *See Branch*, 2010-NMSC-042, ¶ 20 (reasoning that if the substantial rights of a defendant are prejudiced by an amendment of the indictment, the amendment may provide the grounds for an acquittal under Rule 5-204(C)). Defendant bears the burden of showing that prejudice resulted from the amendment to the criminal pleadings. *See Dombos*, 2008-NMCA-035, ¶¶ 25-26 (reasoning that the defendant has the burden of establishing prejudice through a specific claim of prejudice).

25

Defendant asserts that he had prepared for and defended against Count 1 based on penile penetration and that his substantial rights were prejudiced because the indictment was changed after Defendant had already cross-examined the State's witnesses and the State had rested its case. Defendant relies on *State v. Armijo*, 90 N.M. 614, 618, 566 P.2d 1152, 1156 (Ct. App. 1977), where this Court reasoned that prejudice was apparent where the prosecution amended the indictment to include additional alternatives for committing second degree CSP (CSP II) after the close of evidence. Initially, we recognize that *Armijo* was decided under the former Rule 7(c) of the Rules of Criminal Procedure. *Armijo*, 90 N.M. at 618, 566 P.2d at 1156. Furthermore, *Armijo* is distinguishable from the present case. In *Armijo*, the original indictment charged the defendant with CSP II while armed with a deadly weapon, and the indictment was amended after the close of evidence to "add[] a charge of CSP II by force or coercion which results in personal injury to the victim." *Id*. This Court reasoned that the additional charge prejudiced the defendant because the element of personal injury "was not a matter directly in issue on any of the charges on which defendant was tried[.]" *Id.*

In contrast to *Armjio*, here both the original and amended indictment were based on the same element of penetration to any degree or extent of the primary genital area. In a pretrial statement, Victim indicated that Defendant "would try and put it through

my private hole." At trial, Defendant did not object to Victim's testimony that Defendant "put his pinky up [her] private." Furthermore, during cross-examination, defense counsel questioned Victim regarding her testimony about Defendant "put[ting] his finger inside of [her]" and whether she understood what that meant. Given that the penile and digital penetration arose from the same allegation that Defendant put something inside Victim's vagina, we conclude that Defendant "was put on notice and could reasonably anticipate from the indictment what the nature of proof against him would be." *Branch*, 2010-NMSC-042, ¶¶ 21-22 (alteration omitted) (internal quotation marks and citation omitted) (concluding that the defendant was not prejudiced by the addition of aggravated assault as a predicate felony of a felony murder charge where the aggravated assault charge arose from the same underlying conduct as the originally charged predicate felony); *see State v. Lucero*, 1998-NMSC-044, ¶ 25, 126 N.M. 552, 972 P.2d 1143 (concluding that the defendant was not prejudiced where depraved mind murder was added as an alternative theory of first degree murder since the offense was not different and the defendant had notice of the charge).

Furthermore, Defendant fails to articulate how he would have prepared for and defended against digital versus penile penetration differently. Defendant's speculation regarding how he might have conducted his defense differently based upon the

method of penetration does not rise to the level of prejudice required for an acquittal. *See Branch*, 2010-NMSC-042, ¶ 21 (concluding that a defendant's "mere speculation of how he would have conducted his defense differently does not rise to the level of prejudice that is required for an acquittal"). As a result, we conclude that the district court did not err by allowing the State to amend the method of penetration in Count 1 to conform to the evidence at trial. We affirm Defendant's conviction for CSP I in Count 1.

**E.      Ineffective Assistance of Counsel**

Defendant argues that he was denied his right to a fair trial based upon ineffective assistance of counsel. Specifically, Defendant contends that defense counsel's failure to obtain an expert witness to testify regarding how Victim's family trauma may have affected her perceptions of the alleged abuse constituted ineffective assistance of counsel.

In order to establish an ineffective assistance of counsel claim, a defendant must (1) "demonstrate error on the part of counsel," and (2) "show that the error resulted in prejudice." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289. With regard to the first prong, "[t]rial counsel is generally presumed to have provided adequate assistance." *Id.* Assistance is "deficient if counsel's representation fell below an objective standard of reasonableness." *State v. Roybal*, 2002-NMSC-027,

¶ 21, 132 N.M. 657, 54 P.3d 61 (internal quotation marks and citation omitted). However, "[i]f any claimed error can be justified as a trial tactic or strategy, then the error will not be unreasonable." *Bernal*, 2006-NMSC-050, ¶ 32. Second, pursuant to the prejudice prong, "[a] defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation marks and citation omitted).

We conclude that Defendant has not presented a prima facie case for ineffective assistance of counsel to this Court. Defendant fails to demonstrate an error by defense counsel that cannot be justified as a reasonable trial tactic or strategy. *See id.* The record reflects that defense counsel focused on how neglect and other family issues may have affected Victim's allegations while cross-examining Victim's mother and during closing argument. Defendant claims that the present situation was worse than in *State v. Schoonmaker*, 2008-NMSC-010, ¶¶ 32-34, 143 N.M. 373, 176 P.3d 1105, because the public defender's office presumably had the resources to retain an expert to testify regarding the family trauma. However, *Schoonmaker* is distinguishable because it involved the issue of whether counsel was ineffective for failing to retain a medical expert where the central issue was the cause of the victim's injuries. *Id.* ¶ 33. Consequently, Defendant has failed to demonstrate that defense counsel's strategy of introducing evidence of Victim's family trauma through her mother's testimony

without additional expert testimony was unreasonable. *See Bernal*, 2006-NMSC-050, ¶ 32 (reasoning that "[t]rial counsel is generally presumed to have provided adequate assistance").

As a result, we conclude that Defendant has failed to make a prima facie showing of ineffective assistance of counsel to this Court. However, this decision does not preclude Defendant from pursuing habeas corpus proceedings on this issue should Defendant acquire further support for his claims. *See id.* ¶ 36 (reasoning that where a defendant fails to present a prima facie case of ineffective assistance of counsel on appeal, the defendant is not precluded from pursuing habeas corpus proceedings if the defendant is able to acquire evidence to support his claims).

**III.  CONCLUSION**

We conclude that there was insufficient evidence for Defendant's convictions for two counts of CSCM II and two counts of CSCM III, as charged in Counts 7, 9, 10, and 11. Accordingly, we reverse Defendant's convictions for two counts of CSCM II and two counts of CSCM III, and we remand to the district court with instructions to dismiss Counts 7, 9, 10, and 11 and to amend Defendant's judgment and sentence to accurately reflect the dismissal of these counts. We affirm Defendant's remaining convictions.

**IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**JONATHAN B. SUTIN, Judge**