NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

STEVEN GENE CARTER,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-11631
Trial Court No. 3AN-12-3373 CR

O P I N I O N

No. 2466 — August 7, 2015

Appeal from the District Court, Third Judicial District, Anchorage, Leslie Dickson and Gregory J. Motyka, Judges.

Appearances: Andrew Steiner, Bend, Oregon, for the Appellant. A. James Klugman, Assistant District Attorney, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

_____

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Steven Carter was convicted of third-degree theft for stealing $213 from a wallet during an Easter service at the Tudor Rescue Mission in Anchorage. [1] No one personally witnessed Carter take the wallet, but the theft was recorded by the Rescue Mission's video security system. Several people who viewed this video later testified at Carter's trial. The video itself, however, was not available at trial because the portion of the hard drive containing the video was automatically recorded over by the security system after a number of weeks.

The officer who was assigned to investigate Carter's case testified that he went to the Mission and asked the staff to make him a copy of the video, but he was told that the one person who knew how to do this was not available. The officer returned to the Mission at least five times to get a copy of the video, but he was never successful. Ultimately, it became too late: the security system over-wrote the video.

In this appeal, Carter claims that the Anchorage police had a duty to collect the video and preserve it — and that, because the police did not do so, the trial judge either should have dismissed the theft charge or, in the alternative, should have instructed the jurors that they should presume (contrary to all the evidence) that the video would have been exculpatory. *See Thorne v. Dept. of Public Safety*, 774 P.2d 1326 (Alaska 1989).

Carter's first theory is that the Anchorage police came into "constructive" possession of the video, and that they then allowed it to be destroyed. The facts of this case simply do not support an assertion of "constructive possession", at least as that phrase is normally understood. The video was in the possession of the Mission, the

---

[1] Carter was prosecuted under the 2012 version of AS 11.46.140(a)(1), which defined third-degree theft as the theft of property valued between $50 and $500. In the 2014 legislative session, this statute was amended so that it now covers thefts of property valued between $250 and $750. *See* SLA 2014, ch. 83, § 5.

Mission staff were not acting as agents of the police, and the police in fact made several attempts — all unsuccessful — to obtain a copy of the video. There was no "constructive possession".

Carter argues in the alternative that if police did not constructively possess the video, they nevertheless had a due process obligation to collect the video because they knew that it was material evidence.

Carter concedes that, in general, the government does not have a duty to collect all evidence pertinent to a crime. *See March v. State*, 859 P.2d 714, 716 (Alaska App. 1993). But Carter asserts that the facts of his case merit an exception to this general rule.

There is some authority for the assertion that the police have an affirmative duty to collect and preserve evidence that they know is important. *See Klumb v. State*, 712 P.2d 909, 912 (Alaska App. 1986). But we conclude that this duty does not apply to cases like Carter's — cases where the evidence is in the hands of a third party, where the defendant knows that the evidence exists (and understands the importance of it), where the evidence is not ephemeral (*i.e.*, its probative value will not be impaired by a short delay in collecting it), and where the defendant has essentially the same opportunity as the government to subpoena or otherwise obtain the evidence.

We have encountered analogous situations before. For example, in *Bradley v. State*, 662 P.2d 993 (Alaska App. 1983), a defendant who was involved in a vehicular accident was taken to a hospital, where the hospital staff drew his blood and tested it for medical purposes.[2] Three days later, in accordance with hospital policy, the staff destroyed the blood sample (but retained a record of the test results).[3] The State

---

[2]    662 P.2d at 994.

[3]    *Id.* at 995.

obtained the test results (which included the alcohol content of the blood) and later used those results at the defendant's trial for driving under the influence. [4]

The defendant argued that the test results should be suppressed because the State had failed to collect and preserve the blood sample. [5] But this Court held that the State had no duty to collect and preserve the sample because "the blood sample was taken by and was in the possession of an independent entity ... [,] both the defendant and the [S]tate had the opportunity to preserve the sample." [6]

Similarly, in *Moberg v. Anchorage*, 152 P.3d 1170 (Alaska App. 2007), this Court held that the government had no duty to direct a hospital to preserve a sample of the defendant's blood beyond the hospital's normal seven-day retention period. [7] We relied on the fact that the hospital had drawn the blood sample for medical purposes, that the defendant was aware that he faced DUI charges and the blood sample was relevant evidence, and that both the defendant and the government had the opportunity to preserve the sample. [8]

(Compare *State v. Ward*, 17 P.3d 87 (Alaska App. 2001), where a hospital drew the defendant's blood for medical purposes and later destroyed it pursuant to hospital policy — but the police mistakenly told the defendant that his blood sample would remain available until someone asked to test it. [9] This Court ruled that, once police affirmatively represented to Ward that there was no time limit for collecting the

---

[4]   *Id.* at 994-95.

[5]   *Id.* at 995.

[6]   *Ibid.*

[7]   152 P.3d at 1173-74.

[8]   *Id.* at 1174.

[9]   17 P.2d at 88.

evidence, the State was required to honor that representation. That is, the State "was obliged to make an effort to ensure that Ward's blood sample was preserved as promised." [10])

Carter's case presents circumstances that are analogous to the facts of *Bradley* and *Moberg*. Carter knew that the video existed; the criminal complaint in this case recites that "Carter was observed on recorded security video taking [the victim's] jacket and walking towards the restroom and then leaving the Mission." As we have already explained, the video remained on the Mission's security system hard drive for a number of weeks after this case was filed. During that time, Carter had the same means as the State to obtain a copy of this evidence, either by requesting a copy from the Mission staff or by invoking legal process. We therefore conclude that the police were under no duty to collect or preserve the video.

Finally, Carter argues that he was denied his right of confrontation because the police failed to collect and preserve the video. Basically, Carter argues that his right of confrontation was infringed because government witnesses testified about what they saw on the video, but the video was not available to test these witnesses' testimony.

Carter analogizes his case to the situation presented in *Lauderdale v. State*, 548 P.2d 376 (Alaska 1976), a case dealing with prosecutions for driving under the influence in which the State wishes to offer evidence of the defendant's breath test result. *Lauderdale* holds that if the State wishes to introduce evidence of breath test results, the State is required to offer defendants a way to preserve independent evidence of their blood alcohol content — for example, by preserving a sample of the defendant's breath for retesting. *Id.* at 381-82.

But in *Nicholson v. State*, 570 P.2d 1058, 1064 n. 23 (Alaska 1977), the supreme court described the *Lauderdale* decision as resting on the State's duty to

---

[10] *Id.* at 89.

"preserv[e] ... evidence already gathered by the authorities or created by the authorities." That is not the situation in Carter's case. We therefore reject his confrontation clause argument based on *Lauderdale*.

*Conclusion*

The judgement of the district court is AFFIRMED.

2466